## Ege *et al. versus* Kille *et al.*

1. In trespass for mesne profits, arising from ore lands, it appeared that the defendants were bona fide purchasers for value and in possession under color of title. At the time they took possession the mines were unimproved and defendants expended large sums of money in their development, and made permanent improvements of great value thereon. *Held*, that having acted in good faith in the working of the mines and removal of the ore they were chargeable only with the value of the ore in place.

2. The value of the ore in place is to be ascertained by deducting the cost of mining, cleansing and delivering the ore in market, from its market value thus delivered.

3. The action of mesne profits is an equitable one, and hence a bona fide occupant, under claim of title, who has made permanent and valuable improvements, may show them to be a full compensation for the use of the premises.

4. Whether fast or loose, all the machinery of an ore-bank which is necessary to constitute it such, and without which it would not be an ore-bank equipped and ready for use, are a part of the freehold and pass with the realty.

5. By their recovery, in ejectment, of the lands the plaintiffs recovered all the fixtures put there by the defendants or their lessees, and by the writ of *habere facias possessionem* were put in possession thereof. The right of defendants to their equitable defence likewise then became fixed, and this right could not be impaired by the plaintiffs afterwards permitting the former lessees of the defendants to remove a portion of the machinery.

6. It was not error where there was evidence of increased value to the premises by reason of the machinery and improvements to permit the defendants to send out a statement with the jury.

May 19th 1877. Before AGNEW, C. J., MERCUR, GORDON, PAXSON, WOODWARD and STERRETT, JJ. SHARSWOOD, J., absent.

Error to the Court of Common Pleas of *Cumberland county* : Of May Term 1877, No. 145.

Trespass for mesne profits by the heirs of Elizabeth Ege, deceased, against John T. Kille and Charles Wharton.

The land of which the mesne profits were claimed was recovered by the plaintiffs from the defendants, in an action of ejectment brought 7th June 1872, in which a verdict in their favor was rendered 16th October 1874. On the 26th October 1874 the plaintiffs were put into possession of the premises under a writ of *habere facias possessionem*. In the ejectment John T. Kille defended as landlord.

The action of ejectment was originally begun by the heirs of William Cox, deceased, who, on the trial, were nonsuited. The heirs of Elizabeth Ege, deceased, who recovered the verdict and judgment in that case, did not come upon the record as parties plaintiff until 24th April 1874, from which time only did the action commence as to them. (See Kille *et al. v.* Ege *et al.*, 1 Norris 102.)

The plaintiffs in this suit sought to recover mesne profits from November 1869 down to the execution of the habere facias, or for the time anterior to the 24th of April 1874, and the profits claimed

| | |
|---|---|
| 84 | 333 |
| 128 | 42 |
| 84 | 333 |
| 130 | 586 |
| 84 | 333 |
| 136 | 564 |
| 84 | 333 |
| 151 | 332 |
| 84 | 333 |
| 160 | 307 |
| 84 | 333 |
| 187 | 150 |
| 84 | 333 |
| 213 | ³598 |
| 29 SC | ⁴226 |
| 84 | 333 |
| f216 | ²284 |
| d216 | ³290 |

were those derived from the ore mined and carried away by the defendants and their lessees.

It was shown that the title to the land was in the plaintiffs for and during the time for which mesne profits were sought to be recovered.

The trial was had before Herman, P. J. Twenty assignments of error were made to the admission of evidence on the trial, to the answers to points and the charge of the court. The principal questions involved were as to the value of the ore taken, the manner of proving that value, and the character of the improvements which might be recouped or set off against the value of the ore mined and appropriated by defendants; and for convenience the assignments, as they bear upon these questions, have been grouped together :—

1. To fix the value of the ore in place and to prove its value.

Henry Guiterman, a witness on the stand, having stated that he was one of the lessees of the Guiterman & Robertson bank; that he managed it by and through a superintendent, the usual way of managing banks; that he sent to his superintendent, from time to time, money for the expenses of the bank, in accordance with amounts shown by pay-rolls sent him by the superintendent, and that, by means of an examination of the pay-rolls and the amounts he paid for the expenses of the bank, he can state whether or not he operated the bank at a profit or loss over and above what he received from the sales of the ore; the defendants proposed to ask the witness whether or not he operated the bank at a loss, and if so, what loss, and at what expense per ton he mined the ore, together with an exhibition of the pay-rolls and his account of expenses and receipts.

Under objection admitted, which was the 1st assignment.

Defendants proposed to prove by John T. Kille, one of the defendants, the amount of money he paid in developing the ore upon this property, recovered by the plaintiffs in the ejectment, and in taking out the ore for which he has made return in this case, showing the gross amount received for the same, to be followed by the evidence of the parties to whom he made the payments, that the money was expended for the purpose set forth alone, and this for the purpose of showing the increased value of the property by reason of this development, and that the ore taken out by the defendants was more than paid for by such development.

Under objection admitted, and 4th assignment.

The defendants also offered the pay-rolls referred to by the witness Haskell, the agent of Kille, in connection with the testimony of the witness, for the purpose of corroborating his statement, as to the cost of mining the ore, and of showing how the money sent to him by Mr. Kille was expended.

Admitted under objection, and 5th assignment.

[Ege *v.* Kille.]

The 6th point of the plaintiffs was :—

" The value of the ore in place is the royalty, which responsible parties, competent to judge of the value, would be willing to pay for the privilege of mining it."

The court answered as follows, which was the 13th assignment:—

" This point is refused. The value of the ore in place is ascertained by deducting the cost of mining, cleansing and delivering the ore in the market, from the market value of the ore delivered in the market—the difference is its value in place."

The 8th point of plaintiffs was :—

" If the jury believe that John T. Kille, one of the defendants, was not skilled in mining ore; that he gave no personal attention to the mining operations; that the prices paid by him for superintending those operations, viz., $200 per month to Charles Wharton, and $1000 per year to E. F. Haskell, were extravagant and unnecessary; that the gross amount of his expenditures was greatly above the legitimate cost of opening and working the mines on plaintiffs' lands, then little if any weight should be given to the evidence of the amount expended by him, and it should be so regarded by the jury in ascertaining the real or legitimate cost of mining, or the value of the ore in place."

The court answered as follows, which was the 14th assignment:—

" We decline to answer this point as requested. If, however, you find the facts to be as therein stated, then you should so consider the evidences of the amount expended by Kille as that. No extravagant or unnecessary expenditures, but only such, or so much thereof, as are proper and legitimate expenditures, should be taken into account in ascertaining the real or legitimate cost of mining or the value of the ore in place."

The defendants' first point was :—

" The royalty named in the leases given in evidence in this case is not the absolute measure of the value of the ore in place on the lands of the plaintiffs, but is a measure of such value only in connection with the location of the lands and their natural surroundings."

The court affirmed this point, which was the 15th assignment.

The following portion of the general charge was the 20th assignment :—

" The value of the ore in place you will ascertain by estimating the cost of mining, cleansing, and putting the ore into market, and then deducting this cost from the value of the ore in the market—the difference will be the value in place."

2. In regard to the character of the improvements, defendants proposed to prove the value of the machinery attached to and used in connection with the ore-banks on the lease as a measure of the value of the improvements to the property, for the purpose of enabling the jury to judge of and fix the value of such improve-

[Ege *v.* Kille.]

ments to the property, and of their permanent character, and to show the necessary conveniences and machinery required in mining the ore.

Admitted under objection, and 2d assignment.

The 3d assignment was to the refusal of the court to permit the plaintiffs to ask a witness whether or not he was disturbed in the possession under their lease, by these plaintiffs.

The 6th assignment, the refusal of the court to permit plaintiffs in rebuttal to prove that Guiterman and Robertson, lessees of the defendant Kille, since the recovery of the land by the plaintiffs and since the execution of the habere facias, did, on March 7th 1876, and on March 10th 1876, take away from the Guiterman and Robertson bank, two car loads of machinery, consisting of engines, pumps, pipes, boilers, &c., and that this was done without objection by the plaintiffs, and under the terms and conditions of their lease with Kille, as accepted by the plaintiffs on the attornment of said lessees : this to show that the fixtures, machinery and property connected with the ore-bank did not change its character (of the time of the possession under Kille), when the writ of habere facias was executed; and that defendants should not be permitted to claim the same as permanent improvements, passing with the land.

The plaintiffs' third point was :—

" The plaintiffs are entitled to recover from the defendants in this case, as damages, the value in place of all the ore, timber, &c., taken from the Cox tract by the defendants, or by their lessees, with interest from the time it was taken; and the defendants are entitled to credit, against that value of the ore, only for such improvements put upon plaintiffs' land by defendants or by their lessees, as the jury believe are of a lasting and permanent character, adding a permanent increase of value to the land, and being of lasting or permanent benefit to it."

The 11th assignment was the court's answer, which was,

" This point is answered in the affirmative, and we instruct you as requested, and in addition say to you in explanation, that improvements are of a lasting and permanent character when they are annexed to and made part of the freehold, and give an increase of value to it. The increase is a permanent increase if the value of the land has been increased by the permanent improvements made or put upon it; and if such improvements have increased the the value of the land, they are a lasting and permanent benefit to it."

The 5th point of the plaintiffs was :—

" If the jury believe that the machinery, buildings and conveniences for mining ore, put by the lessees of the defendants upon the land of the plaintiffs, were for temporary use only, and not structures of a lasting and permanent character, then they are not such improvements as entitle defendants to credit against the plaintiffs' demand in this action."

[Ege *v.* Kille.]

The qualification contained in brackets in the following answer to this point was the 12th assignment:—

"We answer this point in the affirmative, and so instruct you. If you believe the machinery, buildings, and conveniences for mining ore were for temporary use only, and not structures of a lasting and permanent character, then they are not such improvements as entitle defendants to credit against the plaintiffs' demand in this action. [And we also instruct you that they are structures of a lasting and permanent character, if they are annexed to and made part of the freehold and give an increased value to it."]

The defendants' 5th point was :—

"The engines, boilers, washers, planes, drums, pumps, ropes, cars and all other matters necessary to convert unimproved land into ore-banks opened and ready to operate as such, are permanent improvements to the property, whether they will last a limited number of years or not, and the defendants are entitled to the difference in value between the property as it was without them and as it was when the plaintiffs were put in possession of it on October 26th 1874, with them in its distinctive character as ore-banks ready to operate, as a defence to the value of the ore in place and before it was taken from the ground."

The 16th assignment was the following answer of the court to this point :—

"In answer to this point, we instruct you that the engines, boilers, washers, planes, drums, pumps, ropes, cars, and all other matters necessary to convert unimproved land into ore-banks opened and ready to operate as such, are permanent improvements to the property, whether they will last a limited number of years or not, provided they be necessary parts of the machinery and fixtures erected and put upon the land for that purpose, and provided also such machinery and fixtures were annexed to the freehold and made part of it and give an increased value to the land. And if, therefore, you find these things to be permanent improvements giving increased value to the land, the defendants will be entitled to the difference in value between the property as it was without them and as it was when the plaintiffs were put in possession of it on October 26th 1874, with them in its distinctive character as ore-banks ready to operate, as a defence to the value of the ore in place and before it was taken from the ground; just to the extent, however, that such difference of value was produced by such improvements made and put upon the premises by the defendants and their lessees."

The 17th assignment was to the affirmance by the court of the sixth point of the defendants, which was :—

"Whether fast or loose, all the machinery of an ore-bank which is necessary to constitute it such and without which it would not be

3 NORRIS—22

an ore-bank equipped and ready for use as such, are a part of the freehold, and the recovery of the land by the plaintiffs in the action of ejectment gave to them the ore-banks on it with all the machinery, whether fast or loose, and necessary to constitute them such equipped and ready for use."

The 19th assignment was to the leave given by the court to the defendants to send out with the jury a statement which, by its highest estimate, allowed the plaintiffs $17,394.23, being for 30,249.12 tons of ore, at 50 cents per ton, with interest from November 1st 1874, against which the defendants claimed $17,222.20 as the average value of improvements, or $21,666.67 as average increased value by machinery and development of ore, to the property as ore-banks. This statement was also accompanied by a list of the various improvements made to the several ore-banks.

The verdict was for the plaintiffs for $1839.30, and judgment was entered thereon. The defendants took this writ, the errors assigned being those noted heretofore.

*S. Hepburn, Jr.,* and *S. Hepburn,* for plaintiffs in error.—The testimony offered from which the jury were to ascertain the value of the ore in place was inadmissible, as it consisted chiefly of hearsay and secondary evidence, and the court erred therefore in submitting to the jury the questions as to the cost of mining, cleansing and putting the ore in market, and the market value of the ore, as there was no legitimate evidence upon any of these questions.

The various admissions of testimony and instructions of the court on the subject of permanent improvements were contradictory, and tended to confuse the jury. The value of the machinery, &c., as personal property—the only way in which it was valued—was confounded with the permanent increase of value which the developments and improvements gave to the land. This was wrong in any event, but particularly so if it belonged to the lessees of defendants and they were permitted to retain it.

The action for mesne profits is an equitable one. Is it equity to forbid plaintiffs to recognise the rights of their tenants? The royalty—the rent—had been paid to Kille. Was it right, in an action against him, to make his tenants pay it again by confiscating their property?

The average value of the improvements "and the average increased value by machinery, &c.," were certainly not supported by any evidence, and therefore the statement sent out with the jury by defendants was an improper one: Morrison *v.* Moreland, 15 S. & R. 61; Terry's Executors *v.* Drabenstadt, 18 P. F. Smith 400.

*L. Todd* and *John Hays,* for defendants in error.—What better mode could be adopted to ascertain the value of ore in place

[Ege v. Kille.]

than the result of mining at the banks for the ore for which compensation is sought? And the evidence to show this result was competent. The charge of the court upon the measure of damages was in accord with Forsyth v. Wells, 5 Wright 291, and with the positive evidence as to the cost of mining ore, of its market value, supported by the amounts expended in mining by the principals who paid and the agents who disbursed the money, it would have been error not to submit the question to the jury.

The instructions of the court upon the questions of permanent improvements are abundantly sustained by authority: Voorhis v. Freeman, 2 W. & S. 119; Pyle v. Pennock, Id. 390; Hill v. Sewald, 3 P. F. Smith 274.

The plaintiffs were rightly in possession of the machinery. When one fixes his own chattels on another's land, it is in legal effect a gift of them to the owner of the land: Hill v. Sewald, 3 P. F. Smith 271.

The recovery in ejectment evicted the tenants: Bauders v. Fletcher, 11 S. &. R. 419; Ross v. Dysart, 9 Casey 452; Tiley v. Moyers, 7 Wright 410; Steel v. Frick, 6 P. F. Smith 175; Schuylkill Improvement Co. v. Schmoele, 7 P. F. Smith 271. It terminated the relation of landlord and tenant between the defendants and their lessees, and the right to remove any of the fixtures—anything that gave the property its changed and distinctive character—was gone: Hill v. Sewald, 3 P. F. Smith 272; Heffner v. Lewis, 23 Id. 302; Hey v. Bruner, 11 Id. 87. The answers of the court were therefore consistent throughout.

The statement sent out with the jury was based upon evidence and was proper: Blight's Executors v. Ewing, 2 Casey 135.

Mr. Justice MERCUR delivered the opinion of the court, October 1st 1877.

This was an action of trespass for mesne profits. Twenty errors are assigned. It is unnecessary to consider each separately. They involve a few principles only. The controlling questions are, the value of the ore taken; the manner of proving that value; and the character of the improvements which may be recouped or set off against the value of the ore mined and appropriated by and under the defendants.

1. The evidence shows the defendants were bona fide purchasers of the land for value, and were in possession under color of title when the trespasses were committed. At the time they took possession the mines were unimproved. They expended large sums of money in their development. They made permanent improvements of great value. Having acted in good faith in the working of the mines and in the removal of the ore, they should be chargeable for the latter only with its value in place: Forsyth

*v.* Wells, 5 Wright 291; Herdic *v.* Young, 5 P. F. Smith 176; Coleman's Appeal, 12 Id. 252.

2. Ore-leave, or the right to dig and take ore, can have no general market value. Its value depends on the position and circumstances of each particular mine; on the quality of the ore; the cost of mining and preparing it for market; its proximity to the places where it is to be used; and on the facilities for transportation: Coleman's Appeal, *supra.* Hence there was no error in the court charging as it did, substantially, that the value of the ore in place was to be ascertained by deducting the cost of mining, cleansing and delivering the ore in market, from its market value thus delivered—the difference being its value in place. Those costs and expenses only which are reasonable and necessary should be deducted from the gross receipts. The court very correctly said, to the jury, " no extravagant or unnecessary expenditures, but only such, or so much thereof, as are proper and legitimate expenditures, should be taken into account in ascertaining the real or legitimate cost of mining, or the value of the ore in place."

We discover no error in the mode of proving the necessary costs and expenses of operating the mines. Due regard should always be had to the usual and ordinary manner of conducting the particular business in question. Each branch of industry has its usages and its practices. The work of mining is one of magnitude. It requires the employment of many men. Laborers, overseers, superintendents and operatives must perform their allotted parts. The keeping of a pay-roll is a usual and convenient practice. It furnishes a prompt and concise method of making a daily record of current expenses. Confirmed, as its correctness was in this case, by the testimony of the operator and superintendent, it was clearly evidence proper to submit to the jury of the sums expended in operating the mines. Its effect was properly guarded and restricted by the learned judge.

3. The action for mesne profits is equitable in its character: Morrison *v.* Robinson, 7 Casey 456; Zimmerman *v.* Eshbach, 3 Harris 417; Kille *et al. v.* Ege *et al*, 1 Norris 102. Hence a bona fide occupant, under claim of title, who has made permanent and valuable improvements, may show them to be a full compensation for the use of the premises: Morrison *v.* Robinson, *supra;* Kille *v.* Ege, *supra.*

The criterion of a fixture depends on the business for which the premises are used. A fixture in a manufactory, mill or colliery may have no adaptation to many other kinds of business. Although not attached, yet, if it be designed for the convenience of trade on the premises, and be so used, or subject to be called into use at any time, it becomes a fixture. If the article is indispensable in carrying on the specific business, it becomes a part of the realty: Voorhis *v.* Freeman, 2 W. & S. 116; Pyle *v.* Pennock, Id. 390.

[Ege *v.* Kille.]

This rule, however, does not prevent a tenant, who erects fixtures for the benefit of his trade or business, from removing them from the demised premises within his term. The question here is between persons who were hostile claimants to the land. As between them, all the machinery and implements necessarily used in working the mines became a part of the realty. There was therefore no error in the court charging, "whether fast or loose, all the machinery of an ore-bank which is necessary to constitute it such, and without which it would not be an ore-bank equipped and ready for use as such, are a part of the freehold, and the recovery of the land by the plaintiffs in the action of ejectment gave to them the ore-banks on it, with all the machinery, whether fast or loose, necessary to constitute them such equipped and ready for use." That some machinery was essentially necessary to raise the ore and prepare it for market is very manifest. It was therefore proper to show what machinery was actually used for that purpose, and to submit its necessity and value to the jury. The evidence was rightly received.

The defendants are entitled to an allowance for such improvements only as are of a lasting and permanent character, and which gave a permanently increased value to the land. This is substantially the third point submitted by the plaintiffs and affirmed by the court. We see no error in the qualification that the increased value may be of limited duration. In answer to the plaintiffs' fifth point, the court said if they "were for temporary use only, and not structures of a lasting and permanent character, then they are not such improvements as entitle defendants to credit against the plaintiffs' demand." An examination of the answers to the numerous points presented to the court fails to discover any error. All questions relating to the permanency of improvements and of value to the premises were correctly answered.

By the recovery of the land the plaintiffs also recovered all the fixtures thereon put there by the defendants or their lessees. By the execution of the writ of *habere facias possessionem* the plaintiffs were put in possession thereof. Right of property and actual possession were thus united in them. The right of the defendants to their equitable defence then became fixed. That right could not be impaired by the plaintiffs afterwards permitting the former lessees of the defendants to remove a portion of the machinery. Such a voluntary relinquishment by the plaintiffs of their property to those having no right thereto, either with or without consideration, could not affect the rights of the defendants, who were not a party to the transaction.

· Inasmuch as there was ample evidence of increased value to the premises by reason of the machinery and improvements, the court committed no error in permitting the defendants to send out a statement with the jury: Blight's Executors *v.* Ewing, 2 Casey 135.

[Ege *v.* Kille.]

The case was well and carefully tried.    The law was clearly and accurately stated by the learned judge.    Substantial justice appears to have been reached; therefore

Judgment affirmed.