## J. H. PALMER ET AL. v. JOHN TRUBY ET AL.

APPEAL BY DEFENDANTS FROM THE COURT OF COMMON PLEAS
OF WARREN COUNTY.

Argued May 5, 1890—Decided October 6, 1890.
[To be reported.]

1. Where a receiver, appointed by the court on the application of the parties, pending an ejectment to recover lands demised for oil production, pays out money upon the order of the court, in good faith, he will be protected, even though the order was made improvidently.
2. If, however, the decree was obtained by mistake or fraud and the money paid out thereon to one of the parties, the court, even after such payment, has power to rescind the decree and require the payees to restore the money to the custody of the court or of its officer.
3. But, if the decree was made in the presence and with the knowledge and assent of the attorneys representing both parties, an order upon the payees for re-payment will not be made, unless the petitioners present a strong equity and show that they will sustain an irreparable injury, if it be not made.
4. The lessees of land, demised to them for the production of oil alone, who obtain gas but not oil, and are thereupon dispossessed by ejectment brought upon a forfeiture alleged, have no equity to be reimbursed the expenses of their operations out of the proceeds of the gas obtained.

Before PAXSON, C. J., GREEN, CLARK, WILLIAMS and McCOLLUM, JJ.

No. 416 January Term 1889, Sup. Ct.; court below, No. 76 September Term 1884, C. P.

On August 2, 1884, by virtue of a warrant of attorney contained in a written lease of land for oil production, a copy of which was filed, a judgment in ejectment for the land demised, to wit, a tract containing 212 acres in Sheffield township, was entered by confession in favor of J. H. Palmer, C. C. Hill, Emma L. DeCondres, and Bertha Hill against John Truby, and also E. P. Allen and Melvina Allen, partners as Allen & Co., and a writ of habere facias possessionem at once issued. On August 5th, on motion of defendants' attorney, a rule to show cause why the writ of habere facias possessionem should not be set aside and the judgment opened was granted, proceedings to stay in the meantime.

Statement of Facts.

On May 9, 1885, pending the proceedings on the foregoing rule, by agreement of the parties Mr. W. D. Hinckley was appointed receiver to take charge of the property in controversy.

On September 5, 1885, an opinion of the court was filed, whereby the pending rule to set aside the writ and open the judgment, etc., was refused; whereupon the defendants took a writ of error to the Supreme Court, on which, on October 4, 1886, the judgment and order of the court below were affirmed: See Truby v. Palmer, 4 Cent. R. 925. Soon afterward, the writ of habere facias was executed and the plaintiffs put in possession of the demised premises. The terms of the lease, upon which said proceedings were had, appear in the report of the case referred to and in the opinion of the Supreme Court in the present case.

On November 10, 1886, Mr. Hinckley, as receiver, filed his final account, which was confirmed nisi exceptions were filed within ten days.

No exceptions having been filed, on November 22, 1886, Mr. Hinckley presented his petition praying that an order be made directing him to make disposition of the moneys in his hands, and that he be discharged from the responsibilities of his appointment, etc. Thereupon, the court made the following order: " The receiver is directed to pay to the plaintiffs the sum of $2,400, and that the amount of $88.49 be paid into court to await further order, and that thereupon the receiver be discharged."

On the same day, to wit, November 22, 1886, the defendants, by their attorney, moved the court " to rescind the order this day granted, allowing the plaintiffs to receive the sum of $2,400 · of the fund in the receiver's hands, the same having been granted without sufficient notice of the application to the defendants, and without sufficient consideration of the equities of the defendants to payment, out of said fund, of the expenses of improvements made by them; and for an order on said plaintiffs to restore said fund, if the same has been paid over to them."

The rule was granted as prayed for, and on December 16th, the defendants presented a formal ,petition, in which it was averred, inter alia, that in the drilling of a well on the demised premises from which the gas was produced from the sale of which the fund in the hands of the receiver accrued, and in the

other operations necessarily connected with drilling and operating on said premises, a large sum had been necessarily expended, which should have been paid by the receiver out of the funds in his hands, and that the reasonable cost of said mining operations amounted to $2,000; that said receiver, upon motion made in court, and without notice to defendants, gave a check for the entire fund, less a small sum, to the plaintiffs; that, as the petitioners were informed, said plaintiffs and their attorneys, before said fund was received by any of them, were notified that an application would be made to have the order allowing said receiver to pay said sum to plaintiffs rescinded, and to have the fund retained until the rights of the parties to said fund should be determined.   Wherefore, etc.

To this petition the receiver and the plaintiffs made answer. In the answers it was averred, inter alia, that when the receiver presented his petition for the order made on November 22, 1886, the attorneys for the plaintiffs and attorneys representing the defendants were present and were heard by the court upon the question as to what order should be made, and that the order made was without objection or exception by the counsel for defendants, but by and with their advice and concurrence; that, after the making of said order, the receiver paid out the money as he was thereby directed, without notice to him that there was any objection to the payment on the part of the defendants, and that the money received by the plaintiffs was at once divided among them in proportion to their several interests therein.   Other averments were made, in reply to the averments of the defendants' petition relating to the cost of operations upon the leasehold.

On February 6, 1888, the cause having been argued upon the petition, answers, and testimony filed, the court, BROWN, P. J., filed the following opinion and decree:

It is very certain that had the counsel for the defendants been apprised of the equitable claim to the fund which the defendants now set up, so that he could have asserted the same, or had the court been apprised in any way of the existence of the claim of defendants, the order of November 22d would not have been made, until the claim of defendants and their right to the whole or a portion of the fund had been adjudicated.

Opinion of Court below.

At the time the order was made, the only question raised was in regard to certain costs which the defendants, by their counsel, asserted should be paid from the funds, and to meet this, the sum of $88.49 was ordered into court.

It appears by the depositions, and the answers filed, that the plaintiffs were notified after they had received the check or checks for the funds, and before the same were paid by the bank, that application would be made to rescind the order directing the fund to be paid to them, but it further appears that before such application was in fact made, the checks had been presented to the bank and the fund paid over to the plaintiffs.

That the plaintiffs made haste to get the money from the bank where it was, as we understand, deposited by the receiver, before the order of court should be rescinded, is probably true, but nevertheless they did so receive it. Having thus received it from the receiver, who paid it under the order of the court, it seems clear that the receiver is exempt from any further liability. The fund has passed from the control of the court and from its officer. Can the court, upon motion, order the plaintiffs to pay the money received by them into court, to the end that any equitable claim of the defendants thereto may be determined? We think not. The parties and the subject matter are out of court. The court has lost its grasp on the fund. Whatever equitable claim the defendants may have for their expenditures on the property recovered by the plaintiffs, we think, can now only be shown in an independent proceeding. We are reluctantly brought to the conclusion that we are powerless, in this proceeding, to order the plaintiffs to pay into court the money received by them.

The rules mentioned in the heading of this decision are discharged.

Thereupon, the defendants took this appeal, specifying that the court erred:

1. In discharging the rule to show cause granted November 22, 1886.

2. In dismissing the petition of the defendants.

3. In not rescinding its order of November 22, 1886, and in not ordering the plaintiffs to restore the fund received by them to the custody of the court or of its officer.

Arguments.

*Mr. Samuel T. Neill*, for the appellants :

1. The equity which sustains the prior right of the defendants upon this fund is, that their labor, money and property have gone to the actual benefit of the plaintiffs, by developing and thus immensely enhancing the value of their property. This is the doctrine applicable to the case in almost the very words of this court, as stated in Noble v. Biddle, 81* Pa. 438. The action for mesne profits is equitable in its character; hence, a bona fide occupant, under claim of title, who has made permanent and valuable improvements, may show them to be a full compensation for the use of the premises: Morrison v. Robinson, 31 Pa. 456; Ege v. Kille, 84 Pa. 340. In Bright v. Boyd, 1 Story 478, cited at length in 2 Story's Eq. J., § 799 b. n. 4, STORY, J., says: "I have ventured to suggest that the claim of the bona fide purchaser (to compensation) is founded in equity. I think it is founded in the highest equity." Moreover, under the rule established by Head v. Meloney, 111 Pa. 99; Gordinier's App., 89 Pa. 528, and Frauenthal's App., 100 Pa. 290, the proceedings taken by the defendants, by petition and rule, followed by answers and the taking of depositions, and the opinion and decree of the court upon the case as thus presented, would seem to be a bar to any other proceeding.

2. That the court below took a conservative view of the power of the court in this matter was mainly due to the fact that, in his opinion, an independent proceeding was available to defendants. But a state of facts existed calling loudly for the interposition of the court. When the plaintiffs were notified, soon after the order was made allowing them to take the fund, that the defendants had a right to be heard on the distribution thereof, no part of it had yet come into their possession. The haste to avoid the interposition of the court, to overreach an opposing party, and to obstruct the course of justice and prevent equity being done, has never yet failed to receive condemnation. The notice to the attorneys of the defendants of the filing of the receiver's account, will not defeat the rights of the defendants. The presence of their attorneys did not bind the defendants; their functions as attorneys in the ejectment ceased with the execution of the writ of habere facias : Lusk v. Hastings, 1 Hill 656; Macbeth v. Cooke, 1 Moore & P. 513; Stackhouse v. O'Hara, 14 Pa. 89; Wharton

on Agency, 539. The defendants themselves were entitled to notice of the application of the receiver to dispose of the fund: Brightly's Eq., 608, 609.

3. Concede, for the sake of the argument, that the plaintiffs can set up their own wrong, and that they, in bad faith, did get actual possession of the cash, after notice and before the court could correct the error, that does not deprive the court of the power to order them to return the money thus received to the custody of the court: Mayhew v. West Va. Oil Co., 24 Fed. R. 205, affirmed in the Supreme Court of the United States as Camden v. Mahew, 129 U. S. 73; Johnson's App., 114 Pa. 132; Connelly v. Philadelphia, 86 Pa. 110. How stands the case upon the facts? The fund was still in the bank to the credit of the receiver, at the time the defendant's counsel notified the plaintiffs and their counsel of the intended application to have the order rescinded. The plaintiffs are clearly estopped from taking advantage of their own wrong. Such conduct was a fraud upon the court, and no title to a fund under its jurisdiction thus acquired can be set up as a reason for retaining it.

*Mr. W. W. Wilbur* (with him *Mr. William Schnur, Mr. Charles H. Noyes* and *Mr. R. Brown*), for the appellees :

1. The rights of these parties under the oil-lease have been entirely adjudicated and determined by this court, in Truby v. Palmer, 4 Cent. R. 925, and the result of that adjudication is that on August 2, 1884, when the judgment in ejectment was entered against the lessees, their rights had ceased under the lease, and that said lessees never had any right whatever, in law or equity, to the proceeds of the gas in question, which they now seek the aid of this court to transfer to them. Moreover, the proceeds of the gas was the product of the well accruing after the judgment in ejectment had been entered, the rights of said lessees to any profits whatever had then ceased and determined, and the expenditures asked to be reimbursed to the lessees were made long before said judgment was entered.

2. The lessees were not only not entitled to the gas, but had no right to occupy or use the land leased to produce gas or any other product except oil. This case has no principles or features in common with an action for mesne profits. The parties' rights are determined by the contract, which is the law

between them; under it, there is no ground for equity to grasp this product of gas and give it to the lessees for expenditures made in experimenting for oil, for they never had any right whatever, under the contract, to the gas or its proceeds: Foster v. Weaver, 118 Pa. 42. No inadvertence or mistake led to the expenditures of the lessees in the present case.

OPINION, Mr. CHIEF JUSTICE PAXSON:

It is very plain that the order of the court below must be affirmed, so far as the receiver is concerned. He paid the money out, in good faith, upon the order of the court. If we concede such order to have been improvidently made, the receiver is nevertheless protected. The real question here is, whether the plaintiffs, to whom the receiver paid the money in obedience to the order of the court, should be obliged to pay it back to the receiver to answer the demands or claims of the appellants against the same.

It is not claimed that any fraud was practiced in procuring the order of the court ordering the money to be paid to plaintiffs. The receiver duly filed his account in the proper court, which was confirmed absolutely, the attorneys for the respective parties having notice of such filing, and no exceptions were filed thereto. On November 22, 1886, after the confirmation of his account, the receiver presented his petition in open court, asking that an order might be made directing how he should dispose of the money in his hands. The receiver avers in his answer, and I do not understand it to be denied, that the attorneys representing the respective parties had notice, at the time, of the presentation of said petition, were present in court when the same was presented, and were heard by the court upon the question of what order should be made. After such hearing, the court made the order which the appellants seek to have rescinded. On the same day that the money was paid to the plaintiffs in pursuance of the order, the appellants obtained a rule on the plaintiffs and the receiver to show cause why the said sum of $2,400 should not be paid into court. It was alleged, and the fact appears to be, that the plaintiffs had notice that such a rule would be applied for, before they actually drew from the bank the money due on the check they obtained from the receiver. Under these circumstances, the learned

judge below discharged the rule, upon the ground principally that the fund having actually passed out of the hands of the receiver, it was no longer subject to the control of the court.

We do not think this necessarily follows. The money was paid to some of the parties litigant, and we are of opinion that if a mistake had been made, much more if a fraud had been practiced upon the court, the learned judge, sitting as a chancellor, could have required the plaintiffs to refund the money, especially in view of the fact that it was actually received after notice that the rule would be applied for. In the case in hand, however, there was neither fraud, accident, nor mistake. It was not done in a corner. It was done in open court, in the presence and with the knowledge of the respective attorneys. There was a time and opportunity to object, and it was neglected, until after the order was made and the money paid over, or at least until the check was given, which is practically the same thing. Under such circumstances, we have no right to interfere unless the appellants present a strong equity, and show that they will sustain irreparable injury if we fail to do so. They have not shown any such equity.

The appellants were the lessees of certain oil territory. The lease was so drawn as to exclude any right on their part to any minerals, gas, or other valuable products, on the lands leased, except "petroleum, rock, or carbon oil." The effect of this lease was before this court in Truby v. Palmer, 4 Cent. R. 925, in which we said:

"It (the lease) expressly declares the property shall be occupied and worked for petroleum, rock, or carbon oil, and shall not be occupied or used for any other purpose whatever; and if no oil is found in paying quantities within four years from this date, (the date of the lease,) this lease shall be null and void. Oil was not so found. It would be a clear perversion of language to hold that gas and oil are synonymous terms. The evidence is insufficient to prove that the word 'gas' was omitted from the lease through fraud, accident, or mistake. The doctrine of equitable estoppel is not applicable to the facts proved."

The appellants put down one well, but gas, not oil, was obtained. They failed to put down a second well as required by the lease, whereby it became forfeited: they were dispossessed

under proceedings in ejectment; a receiver was appointed to take care of the gas, and the fund in court is the proceeds thereof. The appellants contend that they have an equitable claim to be reimbursed out of the fund for the expenses of putting down the well, inasmuch as it has proved of value to the plaintiffs. Noble v. Biddle, 81* Pa. 430, and Ege v. Kille, 84 Pa. 333, were cited as sustaining this view.

As I understand the doctrine of those cases, it is that the action for mesne profits is an equitable one; and hence, a bona fide occupant, under claim of title, who has made permanent and valuable improvements, may show them to be a full compensation for the use of the premises. While no one doubts either this principle or its justice, I am wholly unable to see its application to this case. The plaintiffs are not making any claim for mesne profits. The rights of the parties are determined by their contract, which is a law of their own making. It is a speculative contract, wholly at the risk of the lessees. If they obtain oil, they may make a profit, in some instances a very large one; while if they fail, the loss is wholly their own. They have no right to be reimbursed by the lessors, or out of their property, under any circumstances whatever. As before observed, it was a speculation pure and simple, in which the lessees assumed all the risk. They did so, for the chance of getting seven eighths of the oil. Upon what principle of equity can this risk be shifted upon the lessors, and they be required to pay for the expenditures which the lessees agreed to make at their own risk? It will be seen at a glance that there is no analogy between such case and that of a person who is in possession of land, under color of title, and innocently builds a house or barn, or makes other valuable and permanent improvements upon it. In such case, in an action for mesne profits, he may justly be allowed for the value of such improvements to the extent they have increased the value of the property. But here, the lessees did nothing but what they had agreed to do at their own risk.

Under these circumstances, we need not scrutinize the action of the court below in discharging the rule. The appellants have no equity. It is sufficient to say that the order to the receiver was properly made, and the money paid to the proper persons.

Judgment affirmed.