# LUTHER LYONS et al. v. CENTRAL COAL & COKE COMPANY et al., Appellants.

**Division Two, February 6, 1912.**

1. **MEASURE OF DAMAGES: Coal Mining: Inadvertent Incursion on Another's Land.** In a suit by the owner of land against a mining company for the reasonable value of coal removed from his land by a company, in an inadvertent and unintentional incursion thereon while mining on its own adjacent land, the measure of damages is not "a sum equal to the reasonable market value of the coal at the mouth of the mine, less the expense necessarily incurred in digging and mining said coal and taking it to the mouth of the mine." That rule omits the cost of maintenance of the shaft, machinery and other appliances, and other necessary charges, all of which are difficult of proof; and besides, if such cost should prove equal to the cost of the coal at the mouth of the mine, it would leave the owner of the land nothing for the coal taken.

2. ———: ———: ———: **Value in Place: Royalties.** The true rule for the measure of damages to the owner of land from which a neighboring miner has inadvertently removed coal, is the value of the coal "in place," that is, its value as it lay in its bed, if that value can be established by direct testimony. And where the owner of the land did not mine coal or operate a mine, and direct affirmative proof is available that coal in the bed was sold at so much royalty per ton at the time the neighboring coal mining company inadvertently made an incursion on plaintiff's coal, that proof is the true measure of the damage, is a rule of easy comprehension, and establishes a just measure of the value "in place" of the coal taken. Where the owner is not operating the mine, but can dispose of his coal only by selling it in the bed, its only value to him is its value at that place, which, according to the general rule, is measured by the royalty which is customary and fair at that locality; and where that royalty value can be established by direct proof, such proof should be used to establish the damage.

3. **COAL MINING: Incursion on Neighboring Land Under Royalty Lease: Right of Owner to Sue.** The owners of 480 acres of land had contracted with another, under what was denominated a lease, by which he was to mine coal at a certain royalty per ton. The contract embraces the whole tract. While the contract was in force defendant, a miner on adjacent lands, extended its tunnels and drifts to twenty acres of the land and removed

coal, for the reasonable value of which the owners sue. The lessee had not exercised his right to mine coal on the twenty acres, and his contract had expired before the suit was brought. *Held*, that the owners of the land, and not the lessee or licensee, have the right to maintain the suit. The loss was not his, but theirs.

4. ————: ————: ————: **Title.** Where the plaintiffs have been in the undisputed possession of land for twenty years, they have such ownership, without showing any proper title, as entitles them to recover the reasonable value of coal taken therefrom by an adjacent mining company.

5. ————: ————: **Proof of Amount Taken: Best Evidence Available.** Testimony as to the amount of coal taken by defendant from plaintiffs' lands which consists of the recollection of workmen as to the size and number of rooms in which they worked underground six years before the trial, and as to the thickness and character of the coal taken, if the best evidence within the power of plaintiffs to produce, will not be held to be too vague and uncertain to support a verdict awarding damages for the coal taken, especially as defendant was in a better position to show the true amount than were plaintiffs.

Appeal from Bates Circuit Court.—*Hon. C. A. Denton, Judge.*

Reversed and remanded.

*Daniel B. Holmes, Thos. J. Smith* and *Massey Holmes* for appellants.

(1) Plaintiffs' action is in trespass alleged to have been committed by the defendants willfully on real estate of which plaintiffs claimed to be the exclusive owners and of which they claimed to be in the exclusive possession when the trespass is alleged to have been committed. This exclusive ownership and possession being a necessary condition precedent to a right of recovery, the court below erred in admitting, over defendants' objections, the two deeds read in evidence. No antecedent title was shown in the first grantor. Hammond v. Johnston, 93 Mo. 221; Smith v. McCorkle, 105 Mo. 141; Cummings v. Powell, 97 Mo.

537. Possession in the plaintiffs of the real estate in question was indispensable to the maintenance of this action. Roussin v. Benton, 6 Mo. 592; McMenamy v. Cohick, 1 Mo. App. 535; Furher v. Langford, 11 Mo. App. 288; More v. Perry, 61 Mo. 175; Lindenbower v. Bentley, 86 Mo. 515, 519; Zeitinger v. Hackworth, 117 Mo. 505. And possession of this coal was, as a matter of law, in Williams & Company, and not in plaintiffs. Manning v. Coal Co., 181 Mo. 359; Waters v. Stevenson, 13 Nev. 157. The cost of production and market value at the place, if there is a known market value there, is the only proper evidence to be admitted. Koeltz v. Beckman, 46 Mo. 320; Northrup v. Cook, 39 Mo. 208; Warren v. Mfg. Co., 161 Mo. 124; 1 Wigmore's Ev., sec. 718. (2) The witness Reese having testified for plaintiffs as an expert as to the cost of bringing coal from its natural bed in the mine to the top of the shaft, the court erred in refusing defendants, on cross-examination, to prove all of the elements of the cost which he considered. 2 Wigmore on Ev., sec. 992. (3) The court erred in refusing to admit in evidence the contract made by defendant Coal & Coke Company, showing the price at which it was selling the output of the mine in question covering the period of the defendants' alleged trespass. It was made anterior to the alleged taking complained of by plaintiffs, hence there could have been no motive to induce a contract not expressing the truth, and it was against defendants' interest to have contracted to sell at less than is claimed by plaintiffs to have been the market price. Under these circumstances the evidence was competent and its exclusion error. 2 Wigmore's Evidence, secs. 1422, 1455, 1457, 1462, 1465, 1466, 1467. (4) The court erred in refusing to admit in evidence the lease made by plaintiffs to defendant Coal & Coke Company covering the land in question, under which the testimony of Wallace Lyons shows defendants had entered and were mining coal prior to the institution

of this action.  It was competent as showing the value in place of the coal, and as showing that at the time of. bringing of this action plaintiffs had neither the possession nor right of possession of the land in question.  More v. Perry, 61 Mo. 174; Brown v. Hartzell, 87 Mo. 568; Lumber Co. v. Markam, 96 Mo. App. 54; Lindenbower v. Bentley, 86 Mo. 519; Zeitinger v. Hackworth, 117 Mo. 505.  (5) The measure of such damage is ascertained by finding the difference between what was the market value of such land immediately .before the injury occurred and a like value after the injury is complete.  Martin v. Railroad, 47 Mo. App. 452; Sheehy v. Railroad, 94 Mo. 574; Trust Co. v. Bambrick, 149 Mo. 570.  If the measure of damages is not the difference between the market value of the land prior to and subsequent to the injury, then it is the value of the coal in place and instruction 1 did not properly charge such measure of damages.  In re United Merthyr Collieries Co., L. R. 15 Eq. Cas. 46; Coal Co. v. Rogers, 108 Pa. St. 147; Goller v. Fett, 30 Cal. 481; Jegon v. Vivian, L. R. 6 Ch. App. 742; Coal Creek, etc. Co. v. Moses, 83 Tenn. 300; Austin v. Huntsville Coal Mining Co., 72 Mo. 535; Wood v. Morewood, 3 Q. B. 440; Powell v. Aiken, 4 K. & J. 343; McGuire v. Coal Co., 86 N. E. 174; Keys v. Coal Co., 50 N. E. 911; Hilton v. Woods, 4 Eq. Cas. 432; Crawford v. Oil Co., 57 Atl. 47; Sandy River, etc. Co. v. White House, etc. Co., 101 S. W. (Ky.) 319; Iron Co. v. Iron Works, 102 Mass. 80.

*Silvers & Silvers* and *Silvers & Dawsons* for respondents.

(1) This is not in substance an action for trespass.  Trespass on realty, pure and simple, is an invasion only of the plaintiff's right of possession. The real action of trespass is for merely the immediate injury occasioned by the wrongful entering.  28 Am.

& Eng. Ency. of Law (2 Ed.), page 551. Oftentimes a trespass or breach of plaintiff's right of possession is followed by an injury to the freehold, and in such a case the injury to the freehold may be recovered for in an action known at common law as trespass on the case. Injury to the freehold does not necessarily follow trespass, nor does trespass necessarily precede an injury to the freehold. Plaintiff may suffer an injury to his freehold of which he has no right to possession whatever. In such cases it is not the law that plaintiff cannot recover, simply because his possession has not been disturbed, or because he has no possession to be disturbed. If his property has been damaged he can recover for damages to his freehold estate in an action on the case. 28 Am. & Eng. Ency. of Law (2 Ed.) 622. The abolishment of forms of action in this State does away with the necessity of declaring under either trespass or trespass on the case. It is only necessary to state the facts. Where an injury is to the freehold and not "a mere wrong against the possession," then the action therefor accrues to the owner of the freehold, whether he be in possession or the holder only of a reversionary interest. Ridge v. Transfer Company, 56 Mo. App. 139. The lease to Williams could not be a grant of the fee simple title, for under it his rights terminated in seven years. The plaintiff, therefore, retained a reversionary interest at least. This being true, the plaintiffs had a right to sue for any injury to the freehold which was theirs in reversion. 16 Cyc. 663; Randall v. Cleavland, 6 Conn. 328; Lane v. Thompson, 43 N. H. 320; Tinsman v. Railway, 25 N. J. L. 255; Brown v. Bowen, 30 N. Y. 519; Smith v. Felt, 50 Barb. (N. Y.) 612; Learned v. Ogden, 80 Miss. 769; Beavers v. Trimmer, 25 N. J. L. 97. Actions in trespass may be maintained when the plaintiffs are in the actual or constructive possession. Brown v. Hartzell, 87 Mo. 567. The owner of the freehold may maintain trespass though the same was in

possession of a tenant at the time the trespass was committed. Parker v. Shackelford, 61 Mo. 68; Austin v. Coal Co., 72 Mo. 535; Cramer v. Gresdose, 53 Mo. App. 648; Barley v. Fixture Co., 54 Mo. App. 54. Frank Williams's miners houses and store located on this land did not divest plaintiffs of such possession as entitles them to maintain this action. His possession, to defeat plaintiffs' action, must have been adverse (not subordinate) to the plaintiffs' title. Stone v. Perkins, 217 Mo. 604; Thurmond v. White Lime Association, 125 Mo. App. 73; Arnold v. Bennett, 92 Mo. App. 156. Constructive possession follows the title to the land. Turner v. Baker, 64 Mo. 218; Kirk v. Mattier, 140 Mo. 23; Manning v. Coal Company, 181 Mo. 377. Any possession is good as against a wrongdoer. Reed v. Price, 30 Mo. 442; Watts v. Loomis, 32 Mo. 236; Schrodt v. St. Joseph, 109 Mo. App. 627; Restetski v. Railroad, 106 Mo. App. 382. Plaintiffs own the fee title. Their proof of actual possession since 1881 was sufficient. Zeitinger v. Hockworth, 117 Mo. 506. (2) The market value of a commodity is a matter of public notoriety, to dealers in that community. What others may say to them about it at the time is not hearsay within the law. McCrary v. Railroad, 109 Mo. App. 571; Railroad v. Norcross, 137 Mo. 427. Where witness testifies that he knows the value of a commodity, he should be allowed to testify as to its value. His means of knowledge is a matter for cross-examination, going to the weight of his testimony. Browne v. Insurance Co., 46 Mo. App. 473; McCrary v. Railroad, 109 Mo. App. 571. (3) The plaintiffs' recovery was for compensatory damages only. When such damages are asked the motive of defendants is wholly immaterial. Joice v. Bronson, 73 Mo. 28; Hurt v. Railway, 94 Mo. 255; Goetz v. Ambs, 27 Mo. 28; Green v. Craig, 47 Mo. 90. The allegation that the injury was willfully and knowingly done went to the matter of

punitive damages only. To render defendants liable for compensatory damages it is not necessary that the injury be done either wilfully or knowingly. Lumber Co. v. Craig, 112 Mo. App. 454. The measure of damages contended for by defendants—i. e., the difference in value of the real estate as it was before the injury occurred and a like value after the injury is complete—is the rule with reference to persons appropriating or injuring land under the right of eminent domain, when one is compelled by law to yield up some private right for the good of the general public, not, as in this case, when the injury was committed without the sanction of the law, for the gain it would yield the wrongdoer. In a case of this character, when the act was not willfully or grossly negligent, the true measure of damages is the value of the coal taken at the pit's mouth less the cost of severing it and delivering the same at the mouth of the pit, as was declared by the court in this case. Austin v. Mining Co., 72 Mo. 535; Waters v. Stevenson, 13 Nev. 157; Goller v. Fett, 30 Cal. 481. A slightly modified but more drastic rule is laid down in the following cases: Coal Co. v. Lennon, 91 Ill. 561; Coal Co. v. Ogle, 82 Ill. 627; Coal Co. v. Cox, 39 Md. 1; Herdie v. Young, 55 Pa. St. 176. The case of Austin v. Coal Company, supra, has been cited and followed in the following cases: Arnold v. Bennett, 92 Mo. App. 160; Alt v. Grosclose, 61 Mo. App. 413; Bailey v. Fixture Co., 54 Mo. App. 54; Cramer v. Grosclose, 53 Mo. App. 651. The measure of damages set up in instruction number two is correct. Austin v. Coal Co., 72 Mo. 535; Coal Co. v. Lennon, 91 Ill. 561; Fitzgerald v. Clark, 17 Mont. 100; Empire, etc. Co. v. Bonanza, etc. Co., 67 Cal. 406; Goller v. Fett, 30 Cal. 481; Maye v. Yappen, 23 Cal. 306; Donovan v. St. Louis, etc. Co., 187 Ill. 28; Coal Co. v. Ogle, 82 Ill. 627; Herdie v. Young, 55 Pa. St. 176; Waters v. Stevenson, 13 Nev. 157; Coal Co. v. Cox, 39

Md. 1. (4) Plaintiffs showed both possession and color of title. The evidence warranted the instruction given. Reed v. Price, 30 Mo. 442; Quick v. Rufe, 164 Mo. 412; Baker v. Thompson, 214 Mo. 509. Possession of real estate under claim of ownership is prima-facie evidence of title; especially against a stranger. 16 Cyc. 1074; Railroad v. Norcrosse, 137 Mo. 426; Keither v. Bingham, 100 Mo. 300.

FERRISS, J.—Plaintiffs, on April 29, 1907, sued to recover $60,000 compensatory, and $10,000 punitive damages, for the taking of coal from their land by defendants. They charged that the coal was knowingly and wrongfully taken by defendants, without plaintiffs' knowledge, and was of the reasonable value of $60,000.

The answer was a general denial.

The defendant coal company was operating a coal mine in Vernon county, Missouri, known as Mine 14. The vein of coal mined was about one hundred feet below the surface, was reached by a shaft, and worked by means of tunnels or drifts in various directions. Defendant Jack Williams was superintendent of the coal company. Adjacent, on the east, to the property so occupied by the defendant coal company were 400 acres of land which plaintiffs claimed to own, the west line whereof was about 775 feet east from defendant's shaft. Under this land of plaintiffs also there was coal. Plaintiffs introduced evidence tending to prove that some time prior to April, 1902, the coal company extended its drifts or entries beyond its eastern boundary, into the land of plaintiffs, and took therefrom large quantities of coal, all of which was unknown to plaintiffs until 1906, when a slight cave-in or depression appeared on plaintiffs' land. The coal company ceased operations and abandoned work in Mine 14 in 1903. When plaintiffs' attention was called to the

matter of a probable incursion on their land by defendant, conditions were such that it was impracticable to enter the underground workings and accurately measure the spaces from which it is claimed coal was taken. For the purpose of showing the amount of coal taken by defendants proof was introduced of borings made by plaintiffs from the surface, and testimony from experts on results; also verbal testimony from men who had worked for the coal company in the entries under plaintiffs' land, and who undertook to estimate from memory the number and size of chambers excavated, and also the thickness of the vein of coal mined therein.

From computations based on this testimony plaintiffs arrived at the amount of coal which they claimed the coal company had taken. The testimony of these workmen was given six years after the work was done. Plaintiffs claimed that these computations showed approximately 50,000 tons of coal taken by defendants from their land.

There was testimony tending to prove that the market value of the coal so taken was, at the mouth of the mine, from $1.15 to $1.40 per ton, and that the cost of mining and transportation to the surface was seventy-five or eighty cents. Plaintiffs showed no paper title to the land in controversy, but introduced evidence tending to prove that they and those under whom they claimed had occupied the land, in undisputed ownership and possession, paying taxes thereon, since 1881.

Plaintiffs did not, themselves, mine their coal, and they owned no shaft or other facilities for mining. They sold their coal in the bed, on a royalty basis. It was shown in evidence that in 1891 plaintiffs executed to Frank Williams & Co. a mining lease to 480 acres, including the land in question, on a royalty basis of one cent a bushel, which lease expired by its terms in

1902; also that the lessee mined certain portions of the 480 acres and occupied portions of the surface for miners' houses and other uses connected with his mining operations.

The coal in controversy was under a certain twenty acres, which was a part of the 480 acres, west of a slough thereon. Frank Williams & Co. did some mining on this twenty acres, east of the slough, some years before the incursion by the defendants, but never mined west of the slough.

There was no evidence given by plaintiffs tending to show a willful incursion in their coal mine by defendants, other than the fact that such incursion was made. Defendants gave affirmative, undisputed evidence that the incursion, if it occurred, was inadvertent and made in good faith.

The jury found a general verdict for plaintiffs for the sum of $20,205.40. Further facts considered in the opinion will be found therein.

I. The question of main importance in this case relates to the measure of damages. The petition charges in effect that the alleged wrong was willfully committed by defendant, and asks punitive damages. This claim was abandoned at the trial, and the case went to the jury on the theory of compensatory damages only, based upon the reasonable value of the coal taken. What we shall have to say on the question of damages will be based on the assumption that the taking was inadvertent and innocent of intentional wrong. We may remark, in passing, that such assumption is fully supported by the testimony.

A vast number of cases both in this country and in England have considered the question of a proper measure of damages in cases where mine operators have extended their underground workings into lands of adjacent owners, and taken ores and coal therefrom. These cases may be divided into two general classes

—one where the trespass is willful; the other where it is innocent and inadvertent. In the first class of cases, the prevailing rule is that the owner is entitled to the value of his coal at the surface, no deduction being allowed to the trespasser for the cost of placing it there. It is unnecessary to cite cases on this proposition or elaborate the learning involved in them. The case at bar does not fall within this class.

Regarding the second class, where the taking is inadvertent, different rules have been applied, depending often on the form of the action. All agree that the owner is not entitled to recover the value of the coal at the surface. Some courts have ruled that from the value at the surface the cost of transportation from its original place in the mine only should be deducted in order to arrive at a just compensation to the owner, and that the cost of severing the coal from its bed, and thus converting it into chattels, should not be deducted. This on the theory that the owner suing for damages for the conversion of chattels is entitled to compensation for the value of the coal at the time it was converted into chattels, and hence should not pay for the process which converted the coal into chattels, namely, digging it out of its bed. The cases so holding depend often on the form of the action. The courts, however, have generally adopted the juster rule, that, inasmuch as the claim is for compensatory damages, the owner should be paid the value of the coal to him before the trespass was committed; that is, the value of the coal as it lay in its bed, or, as it is often said, value in place. Two methods have been pursued in arriving at this value in place. One by deducting from the value at the mouth of the shaft the cost of mining and putting it there. This we will consider first. This method was applied in the case below. The jury were told in the first instruction given that if they found for plaintiffs they should give them

"a sum equal to the reasonable market value of the coal at the mouth of the mine, less the expense necessarily incurred in digging and mining said coal and taking it to the mouth of the mine." Obviously the measure of damages so laid down is uncertain, difficult of proof, and may prove inadequate to give the owner fair compensation. It takes no account of the cost and maintenance of the shaft, machinery and other appliances, the investment, the bulk of the fixed charges, or the hazards of the business. It would be impracticable so to do. On the other hand, if it should happen that the cost of mining and raising exceeds the market price at the mouth of the mine, the owner would get nothing. The cases which adopt this measure hold to the doctrine that the owner is entitled to the value of the coal in place. Generally, as applied to the facts in the case, this method of proving value in place has been a proper one. Where the controversy arises between adjacent mine operators, both mining their properties, having suitable appliances and facilities therefor, if one has made incursions into the mine of the other, the owner of the coal wrongfully taken is entitled to the market value of the coal at the mouth of the shaft, less the cost of putting it there. He would have paid the cost of mining and transportation, and he is entitled to any profit derived above that cost. This excess of market value at the mouth of the shaft over the cost of production is the value in place to him, because he himself is in the business of mining this coal. Such is the situation in most of the cases which adopt this method. It may be quite otherwise with one who owns coal land which he is not himself mining; one who, having no shaft or other facilities for production, depends entirely upon selling his coal in the mine upon a royalty basis by means of mining leases. If there is an established market price or royalty for coal so situated, such price

is the value in place to such owner. If there is no market price in the shape of a royalty, it well may be that the method of arriving at the value in place adopted below is the only practicable one to be applied. But if it appears that there is a market value for the coal in place, and that it can be and is sold in place at a certain and easily ascertained price, why should we pursue the cumbersome, uncertain and difficult method of working back from the market price at the mouth of the mine to the coal in place? Why not adopt a commonsense plan, and give the owner the value of his coal in place as that value appears from direct proof? Why permit him to make a profit at the expense of one who has inadvertently taken his coal? There is affirmative proof in this record of a fact of common knowledge, that coal owned and situated as this was is sold in the bed at so much royalty per ton through mining leases and licenses. The lease from these plaintiffs to Frank Williams & Co., in evidence, shows that at the time in question this same, or a similar, vein of coal was under lease or license at a royalty of one-half cent a bushel, which, under the weights fixed by our statute, would be twelve and one-half cents a ton. This amount represents the actual value of the coal in place. This leads to a consideration of the second method of reaching the value in place which some cases have adopted, namely, by direct proof of the value in the bed, on a royalty basis. This is the method which defendant insists should be applied here, considering the fact that plaintiffs were not miners, but mere sellers of coal on a royalty basis. As there is evidence tending to show that there was a market price for the coal in its bed by way of royalty, we think the defendant should have had the benefit of this testimony before the jury, under instructions fixing the royalty as the measure of damages, if the facts should be so found.

Let us see how the matter stands under the authorities. We are cited to the case of Austin v. Huntsville Coal & Min. Co., 72 Mo. 535, which seems to be the only case in this State touching this subject. That case involved, as does this, the taking of coal from a neighbor's mine. Whether the plaintiff operated his mine does not appear. It was reversed because the circuit court had given judgment for defendant on a plea in bar based upon a settlement receipt, which this court held to be error. After reversing the case for the above reason, the court discusses an instruction which ran as follows: "The measure of damages for the coal taken is the value thereof at the mouth of the shaft, less the cost of raising it, and without any deduction for the expense of getting or severing it from the freehold." The sole question considered was whether, where the value of the coal in place was sought to be established by this method, deduction should be made for the cost of severing from the bed as well as for transporting to the mouth of the shaft. The citations made show clearly that this court accepted, to its full extent, the doctrine that the true measure is the value in place. Instance the following citations in the opinion:

From Pennsylvania: "If the defendant was guilty of no intentional wrong, he ought not to have been charged with the value of the coal after he had been at the expense of mining it, but only with its value in place."

From Massachusetts: "The value of the ore is to be estimated as it lay in the bed."

This from an English case: "The plaintiff, although he has suffered a wrong, shall not have any more than he would have had if that wrong had not been committed."

From Greenleaf: "Damages . . . should be precisely commensurate with the injury."

From Connecticut: "No good reason, consistently with moral principle, can be suggested why greater damages should be recovered than have in truth been sustained, except in those cases where the law permits, by way of punitive justice, the recovery of vindictive damages."

In the English case (United Merthyr Collieries Co., L. R. 15 Eq. Cas. 46), referred to by Judge SHERWOOD in the Austin case, supra, it appears that the complainant himself operated a mine on the premises invaded by the defendant. The vice-chancellor, in making the original order, refers in the foot note to this fact as having great weight. He says: "The claimants are themselves owners of mines. They seek their profit by severing the coal in the mine and bringing it to the surface and then selling it. If they had been undisturbed in the possession of which they now complain they must have incurred an expense in severing the coal before they could have made a profit."

In the course of his final opinion in the case, Sir JAMES BACON, V. C., says: "The principle of the decision is that the plaintiff, although he has suffered a wrong, shall not have any more than he would have had if that wrong had not been committed. That I take to be the clear and plain principle. If he had himself severed the coal, he could only have done so by means of disbursements. If he had brought it to the pit's mouth when severed, he could only have done so by means of disbursements. If he himself had severed and brought the coal to the pit's mouth, whatever the value of it might then be would have to be deducted, because he would have borne the expenses on both these heads." Further on he says that "the plaintiff is to be put in the same situation as he would have been in, neither better nor worse, if he himself had severed the coal and brought it to the pit's mouth."

This is a leading case often cited. It will be seen, however, that the rule applied there, namely, deducting total cost of production from market price, was entirely proper, because the complainant himself had a shaft and other appliances by means of which he could have elevated the coal to the surface. Therefore he was entitled to the profit, and it was eminently just in that case that he should recover the value of the coal at the mouth of the pit, less the disbursements occasioned in putting it there. The theory of the case is that the complainant should be paid the value of the coal in place.

The situation of the plaintiffs in the case at bar is altogether different. They have no shaft or other appliances. They are not in the business of mining. The coal has no value to them except its value in place. If that value can be established by direct testimony, then the principle underlying the Merthyr Coal Co. case would seem to require that such measure be adopted.

In the case of Durant Mining Co. v. Percy Consolidated Min. Co., 93 Fed. 166, it appeared that the plaintiff and defendant were adjoining mine operators, and that the defendant extended its workings into the mine of plaintiff and extracted ores therefrom. This case presents practically the same situation as arose in the Merthyr Coal Co. case. Judge SANBORN, speaking for the Circuit Court of Appeals, applies the same rule, and says: "One who unintentionally, and in the honest belief that he is lawfully exercising a right which he has, enters upon the property of another and removes his ore, his timber, or any other valuable appurtenant to his real estate, is liable in damages for the value of the ore, timber, or other thing in its original place, and for no more." He then proceeds to say that the defendant may limit the recovery of the

239 Sup.—41

owner by deducting from the value of the ore at the mouth of the shaft the cost of mining and transporting it to that point. The rule as applied to the facts in that case is a proper one, because the complainant himself had the facilities for mining and elevating the ore. The same rule is laid down by Judge THAYER in the case of Golden Reward Min. Co. v. Buxton Min. Co., 97 Fed. l. c. 421. In that case, too, controversy arose between the owners and operators of adjoining mining claims.

In the case of Stockbridge Iron Co. v. Cone Iron Works, 102 Mass. 80, a similar controversy arose between adjoining mine operators. The court found for the plaintiffs, and stated the measure of damages as follows: "The value of the ore is to be estimated as it lay in the bed, and not as it was after the defendants had increased its value by removing it." It does not appear how this value was arrived at.

The case of Wood v. Morewood, 3 Q. B. 440, is regarded as a leading case on the measure of damages where the taking has been inadvertent. In that case PARKE, B., told the jury that, if they found for the plaintiff, but thought that the defendant was not guilty of fraud or negligence, and acted fairly and honestly in the full belief that he had a right to do as he did, "they might give the fair value of the coals as if the coal field had been purchased from the plaintiff." The method of determining this value is not given. This case falls under the ruling in the case of Hilton v. Woods, L. R. 4 Eq. 432, where the court says: "I propose to declare that in estimating the amount to be paid by the defendant for the coal gotten by him, he is to be paid the fair value of such coal, as if the coal field had been purchased from the plaintiff by the defendant at the fair market value of the district."

In the case of Coal Co. v. Rogers, 108 Pa. St. 147, the following instruction to the jury was approved on

appeal: "The measure of damages is the fair value of the coal at the place there. If there is a market price in place, in the pit or mine, that would be the value you would put upon it, and if there is evidence from which you can find what it was worth before it was touched, it is your duty to do so. If there is no evidence to fix the value in place, what would it be worth at the pit mouth, deducting all the cost of bringing it there, or if there is no evidence from which you can fix the value either in place or at the pit mouth, then you may find what it was worth at a distant market, deducting what it was worth to take it there, even if you had to go to Europe to sell it." Here we find a clear enunciation of the measure of damages to be applied according to the evidence in the case.

Sandy River Cannel C. Co. v. White House Cannel C. Co., 125 Ky. 278, was tried upon the same theory which was applied in trying this case below. The circuit court allowed the defendant credit for what it cost him to get out the coal, and then charged him for what he got for it, leaving a balance of forty-four cents a ton in favor of the plaintiff. Both parties appealed. The Supreme Court cited the following from 20 Am. & Eng. Ency. Law, 792: "It is the prevailing rule that in an action for unlawfully working a mine and extracting coal or ore therefrom, if the taking was not a willful trespass, but was the result of an honest mistake as to the true ownership of the mine, the measure of damages is the value of the coal or ore as it was in the mine before it was disturbed." Also this from 3 Sedgwick on Damages, sec. 935: "Where coal, ore, or other valuable mineral is wrongfully, but in good faith, mined from plaintiff's land, the measure of damages is generally and properly held to be the value of the coal or ore taken as it lay in the mine." Also this from Barringer & Adams on Mines, 680, after a similar statement of the rule: "This

valuation may also be expressed as the usual royalty paid for the right of mining.'' The court says in its opinion: ''The only feasible way that this coal could be gotten out, according to the proof, was through the mine which the defendant had opened. The defendant took the 3,942 4-5 tons of coal under an honest claim of ownership. . . . Under such circumstances, all that the plaintiff can fairly ask is that it shall be made whole. It cannot ask that it shall be enriched at the cost of the defendant, or that more than a fair and reasonable compensation shall be paid it for what it has lost. . . . The proof shows that a reasonable royalty on bituminous coal is seven cents, and on cannel coal twenty-five cents.'' Judgment was ordered accordingly.

The case last cited is directly in point here.

The case of Coal Creek Min. & Mfg. Co. v. Moses, 15 Tenn. (Lea) 300, presents a full discussion of the question involved here, and concludes thus: ''The facts of this case do not show any special ground for damages to the complainant's land, and all that he can reasonably ask is just compensation, which would be the value of the coal taken *in situ*, or the usual royalty for mining, one cent per bushel.''

It is unnecessary to cite further authorities. The principle generally adopted is that the owner should be compensated by giving him the value of his ore, lying in its original bed. In cases where the owner is himself operating the mine, has the necessary appliances to sever it from the bed, elevate it to the surface and put it upon the market, he is entitled to the profit and the value of the coal in the market, less the cost of putting it there. In cases where the owner is not operating the mine, but can dispose of his coal only by selling it in the bed, its only value to him is the market value at that place, which, according to general cus-

tom, is measured by the royalty which is customary and fair in that locality.

In the case at bar, the defendants had no facilities for mining this coal, and were ready to dispose of it in place on a royalty basis. In fact they attempted to do so. The coal was worth to them, according to the highest value shown in evidence, twelve and one half cents a ton, and no more. To allow them to recover fifty-five cents a ton, as was claimed by their counsel, or even forty cents, as was allowed them by the jury under the instructions of the court, would be grossly unjust.

Referring now to the cases cited by plaintiffs:

We have discussed above the case of Austin v. Huntsville Min. Co. That case decided that where the value in place is sought to be ascertained by deducting from the market price the cost of production, the entire cost, including the digging out of the coal, should be deducted. That was the only question presented or considered in that case. The reasoning in the opinion sustains our views.

In Waters v. Stevenson, 13 Nev. 157, the controversy was between the operators of adjacent mines. The court held erroneous an instruction authorizing the jury to deduct from the market value only the cost of raising the ore. The holding is that the entire cost, including the mining, should be deducted. The reason given by the court for applying the rule of deduction of cost from market price fully sustains our conclusion that the rule should properly be limited to cases where the complainant himself is in position to mine the ore, and where there is no other feasible method of proving value in place. The Nevada court says: "If defendant had not expended his money in mining the ores, Armstrong (plaintiff) would have expended his own. So too, it might be added that if defendant had not taken out the ores, transported them to the mill

and there separated the precious metals from the earth, in all probability Armstrong would have done so. . . . . We must confine our view to the condition of the property and the extent of Armstrong's property rights when their value was the measure of Armstrong's actual loss, rather than their value on a subsequent day when the ores instead of representing such loss, had been appreciated by defendant's labor.''

The case of Goller v. Fett, 30 Cal. 481, which holds that the cost of digging should be deducted; is also a case where if defendants had not extracted the ores the plaintiffs would have done so.

McLean Co. Coal Co. v. Lennon, 91 Ill. 561, was a case in trover wherein the drastic rule was applied that defendant should be allowed to deduct from the market price only the cost of conveying the coal to the mouth of the shaft. This rule seems to be based on the form of the action, and excludes the cost of converting the coal from its original bed into a chattel. Neither this case nor the case of Ill. & St. Louis Ry. & Coal Co. v. Ogle, 82 Ill. 627, which announces the same doctrine, is in point here. Plaintiffs do not invoke the rule of those cases.

Similar comment may be made on the case of Barton Coal Co. v. Cox, 39 Md. 1. This last case contains an interesting review of decisions, and indicates how far the measure of damages has been affected by the common law forms of pleading, with which our practice is not encumbered.

The case of Herdic v. Young, 55 Pa. St. 176, loses its force in view of the decision in the case of Coal Co. v. Rogers, 108 Pa. St. 147, supra.

We fully appreciate the force of plaintiffs' argument that sale for a royalty is a matter of contract, and that the rule announced above in effect compels the owner to sell whether he will or no. This argument would apply with its full force to a case where the

taking was a willful trespass, but where the taking is in good faith, the abstract right of contract ought not to prevail over plain justice. Whether the taking was intentionally wrongful is the controlling question upon this point.

Although we have said enough to reverse the case, and indicate the proper theory of damages on re-trial, we shall now rule upon some other points which go to the right of action.

II. Defendants assert that plaintiffs cannot maintain this action, for two reasons: (a) Because at the time of the alleged trespass Frank Williams & Co. were in possession, under a mining lease; (b) because plaintiffs have not shown title in themselves as against the whole world.

This suit was filed in 1906. The lease to Williams expired in 1902. The coal was taken prior to 1902, while the lease to Williams was in effect, and while he was mining other portions of the leased tract. It is unnecessary to determine whether Williams's contract was a lease or license. Conceding it to have been a lease, he had no ownership in the coal that he did not mine. He had an option, a right to mine this coal in controversy; failing to exercise his right, the ownership remained in plaintiffs. Whether Williams alone could have maintained this action while his contract was in force we need not decide. He quit the property without having in fact attempted to mine this coal, and without having indicated any intention to do so. The loss, therefore, was not his, but was the loss of the owners of the land. The coal belonged to them, and in them only was the right, in 1906, to recover. Defendants misconceive the nature of the action. The wrong may have involved an injury to the fee. This is not sued for. The action is to recover the reasonable value of the coal taken.

We think the ownership established by the plaintiffs sufficient for the purposes of this case, the only objection being that they did not show paper title back of their possession, which, it is undisputed, they had since 1881, and certainly so in view of the fact that defendants assert the validity of the contract by which plaintiffs leased the mining rights to Williams & Co. The defendant Coal Company was a mere intruder on the property claimed by and in possession of plaintiffs, or one claiming under them.

III. Defendants insist that the true measure of damages is to be found in the difference in value of the real estate, that is, the land and the coal under it as a whole, before and after the taking. As stated above, this is not an action to recover for injury to the land. The rule invoked by defendants and the authorities cited do not apply. We rule this point against defendants.

IV. Defendants claim that the testimony as to the amount of coal taken was too uncertain and vague to support the verdict. True, the evidence mainly relied upon was the recollection of workmen as to the size and number of the rooms in which they worked underground six years before, and as to the thickness and character of the coal. If the plaintiffs produced the best evidence within their power to obtain, and this evidence tended to prove the amount taken, they were within the law. The defendants had the opportunity, and should have been in a better position than were plaintiffs, to show the true amount, or that there was no incursion at all into plaintiffs' land.

Because of error in the instruction on the measure of damages, the judgment is reversed and the cause remanded. *Kennish, P. J.*, and *Brown, J.*, concur.