WARD v. SPADRA COAL COMPANY.

Opinion delivered May 11, 1925.

1. MINES AND MINERALS—LIABILITY OF LESSOR FOR CONVERSION BY LESSEE.—To render a lessor of a coal mine liable in trespass for conversion by his lessee of coal on adjacent land, it must appear that the lessor acted in concert in committing the trespass or otherwise aided and assisted the lessee to commit the trespass.

2. MINES AND MINERALS—CONVERSION OF COAL—EVIDENCE.—In an action for conversion of coal on adjacent land by a lessee of a coal mine, evidence held to sustain a finding that the lessor told the lessee to mine the coal in question.

3. MINES AND MINERAL—UNLAWFUL CONVERSION OF COAL—MEASURE OF DAMAGES.—Where coal is unlawfully extracted from another's premises through honest mistake, the measure of damages is the value of the ore in place in the ground; but where the taking is done wilfully and intentionally, the measure is the value of the ore at the mouth of the mine.

4. MINES AND MINERALS—PRESUMPTION AS TO TAKING OF ORE.—The wrongful taking of ore is presumed to be intentional and wilful, but the presumption may be overcome.

5. MINES AND MINERALS—UNINTENTIONAL TRESPASS.—Where a lessor instructed a lessee to mine all the coal in a vein which in fact ran into an adjacent proprietor's land, and it was fairly inferable that they thought the vein would run out before reaching the boundary of his claim, the lessor and lessee were inadvertent trespassers, and liable only for the value of the coal as it lay in the ground.

6. MINES AND MINERALS—DAMAGES.—In an action for conversion of coal by a lessor through his lessee, damages assessed on the basis of the lessor's royalty held improper.

7. MINES AND MINERALS—INTEREST ON VALUE OF CONVERTED COAL.—In an action for conversion of coal, interest on its value in place in the ground from the time of conversion held proper.

Appeal from Johnson Chancery Court; *W. E. Atkinson*, Chancellor; modified.

STATEMENT OF FACTS.

The Spadra Coal Company instituted this suit in the circuit court against A. F. Ward, M. M. McWilliams, N. R. Clark, James Dalton and James Hardin, to recover damages in the sum of $18,800, on account of the wilful and intentional trespass of the defendants in mining coal on their lands. On motion of the defendants, and without objection, the case was transferred to the chancery court.

The record shows that A. F. Ward, M. M. McWilliams and N. R. Clark had a lease to mine coal on eighty acres of land in Johnson County, Arkansas. The land is described in their lease, and one forty-acre tract lies north of the other forty-acre tract. Their mine was known as the Possum Trot mine, and, after they had mined coal on it for about thirteen years, they leased their mine to James Hardin and James Dalton. They had about $35,000 worth of coal mining machinery and equipment at the time they leased the mine to Hardin and Dalton. They had also spent several hundred dollars in getting their coal tracks repaired before they leased the mine. The Spadra Coal Company operated a mine called the Sunshine mine, which was on the forty acres of land immediately west of one of the forty acres of land mined by the defendants.

Dalton and Hardin, while operating the mine under their lease from the defendants, Ward, McWilliams and Clark, took 4,005 tons of coal from the land on which the Spadra Coal Company operated a mine, and paid to their lessors a royalty of 75 cents per ton, which was the contract price provided in their lease. The plaintiff introduced evidence tending to show that this coal was wilfully and intentionally mined by the defendants. On the other hand, the evidence for the defendants, McWilliams, Ward and Clark, tends to show that the coal in question was not wilfully and intentionally taken from

the land of the plaintiff, and that they had no knowledge that their codefendants, Dalton and Hardin, had mined any coal from the land on which the plaintiff had a lease.

The testimony on this phase of the case and as to the value of the coal in question will be more particularly stated and referred to in the opinion.

The chancellor found the issues in favor of the defendants James Dalton and James Harding, and against the defendants A. F. Ward, M. M. McWilliams and N. R. Clark. It was therefore decreed that the plaintiff recover from the defendants A. F. Ward, M. M. McWilliams and N. R. Clark the sum of $3,003.74, which is found to be the value of 4,005 tons of coal at 75 cents per ton, which said defendants wrongfully mined from the land of the plaintiff. It is also decreed that the plaintiff should recover from the defendants $550.75 interest.

The defendants Ward, McWilliams and Clark have duly prosecuted an appeal to this court.

*Jesse Reynolds,* for appellants.

*G. O. Patterson,* for appellee.

HART, J., (after stating the facts). The defendants Dalton and Hardin had leased a coal mine, together with its mining machinery and equipment, from the defendants Ward, McWilliams and Clark, and agreed to pay them a royalty at the rate of 75 cents per ton for all coal taken from the mine by them. They wrongfully mined 4,005 tons of coal on an adjoining tract belonging to the plaintiff, and paid the royalty on this coal to their lessors.

Under these circumstances the defendants Dalton and Hardin were trespassers, and, the tort having been waived by the plaintiff, it had a right to sue Dalton and Hardin for the value of the coal taken by them. To entitle the plaintiff to a judgment against Ward, McWilliams and Clark, the lessors of Dalton and Hardin, it must not only appear that they were landlords of Dalton and Hardin, who took the coal, but also that they participated in some way in the act of going into the plaintiff's land to get it. In other words, it must appear that the

defendants acted in concert in committing the trespass complained of, or that the lessors in some way aided and assisted their lessees to actually commit the trespass. This is in application of the well-known rule that, to render one man liable in trespass for the acts of others, it must appear either that they acted in concert or that the act of the individual sought to be charged ordinarily and naturally produced the acts of the others. *Offerman* v. *Starr*, 2 Pa. St. 394; *Bard and Wenrich* v. *Yohn*, 26 Pa. St. 482; and *Dundas* v. *Muhlenberg's Executors*, 35 Pa. St. 351.

On the part of the plaintiff it was shown that McWilliams, acting for himself and Ward and Clark, told Hardin, one of the lessees, to go ahead and mine the coal which is the subject of the controversy in this case. This fact was testified to by James Hardin. Hardin said that McWilliams told him to go ahead and take the coal out between their mine and the Sunshine mine. McWilliams said that the Sunshine mine could not get to the coal in question, and, for that reason, told him to take the whole thing out. On the other hand, McWilliams denied having told Hardin to take out the coal in question, and said that he did not know anything about it until the plaintiff demanded payment for the coal taken, which was some time after the royalty had been paid them for the coal taken.

The chancellor found the issues on this point in favor of the plaintiff, and it cannot be said that his finding is against the weight of the evidence. Hence it may be said to be established that McWilliams and his associates acted in concert with Dalton and Hardin in taking out the coal in question, or at least advised them to mine. Therefore, under the principles of law above announced, they became jointly liable to the plaintiff for the value of the coal taken.

The measure of damages in an action for unlawfully extracting ore from the premises of another depends upon whether the invasion of the premises was through

inadvertence or honest mistake, or was willful. If the trespass is the result of an honest mistake, the defendant is compelled to pay only the value of the ore as it was when originally in place in the ground. If, on the other hand, the defendant takes out the ore wilfully and intentionally, he must pay the value of the ore as found at the mouth of the mine. *Lindley on Mines,* 3 ed., vol. 3, par. 868; *Hall* v. *Abraham* 44 Ore. 75 Pac. 882; *Central Coal & Coke Co.* v. *Penny* 173 Fed. 340; *Resurrection Gold Min. Co.* v. *Fortune Gold Min. Co.* 129. Fed. 668; *Lyons* v. *Central Coal & Coke Co.* 239 Mo. 626, 144 S. W. 503; and *Ege* v. *Kille,* 84 Pa. 333.

The measure of damages for wrongfully taking ore from the land of another, through mistake or in good faith, is the value of the ore in place in the mine. The wrongful taking of the ore raises a presumption of fact that the trespasser took it intentionally and wilfully, but this presumption may be overcome by the evidence in the case.

As we have already seen, the chancellor accepted the evidence for the plaintiff on the question of McWilliams and his associates advising their lessees to mine the ore in controversy. James Hardin, one of the lessees, was the witness who testified for the plaintiff on this point. His evidence establishes the fact that his lessors and the plaintiff both operated mines on adjoining forty-acre tracts of land. His lessors had been mining the ore themselves, and, in consequence, knew the direction of the vein they were mining. They knew that they were near the boundary line of their own mine, and it is fairly inferable from the testimony of Hardin, taken as a whole, that they thought the vein would run out by the time their boundary line was reached, or, in any event, soon afterwards; that they did not believe that it would be practicable for the plaintiff to mine the coal in question.

Under these circumstances, we think that, while the defendants were trespassers, they were innocent trespassers within the meaning of the rule relative to the

measure of damages, and that they took the coal inadvertently, or in the honest belief that they had a right to do so. Hence they were only liable for the value of the coal as it lay in the ground.

It results from the authorities cited above that such value depends upon the position and circumstances of each particular mine, on the quality of the ore, the cost of mining and preparing it for market, its proximity to the places where it is to be used or sold, and on the facilities for transportation.

On these points there is a lack of evidence in the record. The chancellor allowed 75 cents per ton on the ore taken as its value. There is nothing in the record to show where he got this value, unless it is the royalty provided for in the lease between McWilliams and his associates and Dalton and Hardin. The royalty in this lease cannot be considered under the circumstances of this case as a proper method in arriving at the value of the ore in the ground. The work of mining is one of magnitude, and requires a considerable outlay of money. In this case the lessors had mining machinery and equipment of the value of $35,000. They had also expended several hundred dollars in track-laying. These outlays were proper matters to be considered in fixing the royalty they were to receive in leasing their mine. Hence the royalty provided for in the lease could not be considered as a proper method of ascertaining the value of the coal as it originally lay in the ground.

On the other hand, there was evidence in the record which tended to fix the value of the coal in the ground. The plaintiff and the defendants were coal operators. The evidence in the record tends to show that the royalty usually paid in that locality for mining coal, where the machinery and equipment was not considered, was ten cents for slack coal and fifteen cents for hard coal. This evidence is not disputed, and should have been taken by the chancellor in fixing the value of the coal taken. The coal taken amounted to 4,005 tons. It is fairly inferable

that it was hard coal.   The value of the coal taken amounted, in round numbers, to $600.

Interest on the value of the coal in place at the time of the conversion was properly directed to be allowed. It is as necessary a part of complete indemnity as the value itself. It has always been the law of this State that interest from the time of conversion, in addition to the value of the property converted, is allowed as damages. The coal in question was taken in November and December, 1920. The trial was had on the 19th day of December, 1923. Interest on $600 for three years at six per cent. would amount to $108.

The result of our views is that the measure of damages is the value of the coal in place at the time of the conversion, which we have found to be $600, with interest up to the time of the trial, amounting to $108. Therefore the decree of the chancery court must be reversed, and a decree will be entered here for $708, with interest at six per cent. from the 19th day of December, 1923.

It is so ordered.