Paul M. GIUDICY and Melva M. Giudicy,
Respondents,

v.

GIUDICY MARBLE, TERRAZZO & TILE
COMPANY, a Corporation,
Appellant.

No. 46606.

Supreme Court of Missouri,

Division No. 2.

Nov. 9, 1959.

Motion for Rehearing or to Transfer to
Court en Banc Denied Dec. 14, 1959.

J. Marvin Krause, St. Louis, and Harold B. Bamburg, Clayton, for appellant.

Thurman, Nixon & Blackwell, Earl R. Blackwell, Hillsboro, for respondents.

BOHLING, Commissioner.

Paul M. Giudicy and Melva M. Giudicy, husband and wife, sued the Giudicy Marble, Terrazzo & Tile Company, a corporation, in three counts. We designate the parties as in the trial court. Plaintiffs, in Count I, sought a recovery for a balance allegedly due under a lease on premises owned by them for royalties based upon the tonnage of rock removed by defendant in operating a quarry from March 3, 1941, and prior to October 1, 1956. They claimed damages against defendant for trespassing upon and removing stone from their land beyond said leased premises in Count II and prayed for the forfeiture of the lease in Count III. A jury returned a verdict for $16,000 on Count I and for $2,000 on Count II, and judgment was entered in accordance with the verdict. The court refused to decree forfeiture and plaintiffs did not appeal from the judgment for defendant on Count III. Defendant has appealed from the judgment entered on Counts I and II, and contends plaintiffs failed to prove their alleged damages under Counts I and II with "reasonable certainty"; that plaintiffs' instruction No. I submitted an erroneous measure of damages for plaintiffs' recovery under Count II and that the verdicts on both counts were excessive.

■ The evidence and the reasonable inferences most favorable to the verdict are for consideration and defendant's evidence is disregarded unless it aids plaintiffs' case. Capra v. Phillips Inv. Co., Mo., 302 S.W.2d 924[1]; York v. Daniels, 241 Mo.App. 809, 259 S.W.2d 109[1]. Such evidence supports the following statement:

The Giudicy Marble, Terrazzo & Tile Company, defendant, was incorporated in 1924. Henry Giudicy and plaintiff Paul Giudicy, his son, owned and operated defendant company until 1942.

Plaintiffs owned three adjoining tracts of land; to-wit: a 68-acre tract, 52 acres of which were under the lease here involved to defendant; a 40-acre tract on which plaintiffs had a quarry; and a 15-acre tract.

Ellis Bage formerly owned the land. He quarried 8,000 or 9,000 tons of rock for a road on the 40-acre tract in 1924. He leased his land to defendant in 1933 or 1934, authorizing defendant to quarry the entire area. There was no quarrying on the 68-acre tract between 1924 and his lease to defendant. The "Giudicys," defendant, quarried in a "sketchy" way, a little here and there, for four or five years. The lease

between Bage and defendant ended in 1938, and about that time in 1938 plaintiffs purchased the 68-acre tract from Bage. Plaintiffs permitted defendant to operate its quarry without a written lease until March 4, 1941, when the lease here involved was executed. Plaintiff Paul had the responsibility of keeping defendant's records. His wife assisted him. The father wanted the duplicates of the records and told them "to keep all records down here with us."

Ray Giudicy was a marble cutter by trade and engaged in the terrazzo and marble business. He and Paul Giudicy are brothers. Ray purchased defendant company, became its president and took over its operation in 1942. Paul continued working for defendant until April, 1943.

The lease of March 3, 1941, between plaintiffs, as lessors, and defendant, as lessee, granted defendant the right to quarry and remove rock from a specifically described 52.38 acres of plaintiffs' 68-acre tract of land for a period commencing March 1, 1941, and ending March 1, 1985. Defendant agreed to pay, as rental therefor, $10 per year, payable on March 1st, in advance, "together with royalties of five (5) cents per ton for each ton of rock removed from said premises, said royalties to be paid quarterly, on or before the 15th day of January, April, July and October of each year," with a minimum guaranteed calendar year royalty of $100, payable January 15 of each year.

Defendant entered into possession and has continuously operated under said lease since March 1, 1941. The lease contained no provision for the lessors to check the amount of rock defendant removed from the premises. Defendant mailed to plaintiffs quarterly statements purporting to show the totals in pounds and tons of the rock removed, together with royalty payments based upon said quarterly statements. All but a few of said statements were introduced in evidence by plaintiffs and the contents of the missing ones were testified to by them.

According to plaintiffs' evidence, not disputed, defendant removed 11,796.55 tons of rock between 1933 and the end of the first quarter of 1941. Plaintiffs' evidence, based on statements of tonnage and remittances received from defendant, also established that an additional 64,940.90 tons of rock were removed under the lease here involved by defendant prior to October 1, 1956. This makes a total of 76,737.45 tons.

Defendant quarried rock for terrazzo chips, small pieces of limestone of different colors. The dirt and overburden on top of the stone to be quarried is first removed and left on the premises. The stone to be quarried is then blasted loose, hauled to the crusher, processed and sacked in 100-pound bags for sale as terrazzo chips. The residue is either sold or stock-piled for sale as agricultural lime. About one-third of the crushed stone is agricultural lime.

Robert Volz, a registered engineer and surveyor of the State of Missouri, was plaintiffs' principal witness on the amount of rock removed from plaintiffs' premises by defendant. No point is made in defendant's brief respecting his or witness Johannes' (hereinafter mentioned) qualifications.

Volz was at defendant's quarry two weeks in October, 1956, to make his calculations. He surveyed and made a plat of said quarry to determine the portion that extended onto plaintiffs' land not described in the lease and to calculate the volume of stone removed. He testified that he used the only prescribed engineering method known for determining the tonnage that had been removed. To obtain the shape of the top of the surface he considered the slope of the ground above and below the quarry, his visual inspection of tree stumps and other points, and a United States Geodetic Survey quadrant made before his survey was taken and having contours on it. He surveyed the perimeter of defendant's quarry. He took cross-section measurements at each distinct change in the shape of the quarry. "Then we took the mean distance through

the cross-section and the average area of two cross-sections, took two cross-sections at each end of a distance and the mean, and multiply that together and you will come out with the volume. We added all these volumes together. I think there were about fifty of them all told. That is the way I obtained the cubic feet." He calculated the volume of the fill and overburden left on the premises by the same method. He used 165 pounds per cubic foot as the weight of rock for his calculations, which his and other testimony established as the weight usually used by engineers for limestone.

Volz calculated that 5,411,100 gross cubic feet, or 447,000 tons of rock had been quarried on the leased premises, and subtracting 36,400 tons of fill and overburden, showed 410,600 tons of rock removed from the leased premises. Subtracting also the 76,737.45 tons of rock removed prior to March 1, 1941 gives 333,862.55 tons of rock removed from the leased premises during the term of the lease up to October 1, 1956, and unpaid for. This, at the five cents a ton royalty, amounts to $16,693.12.

By a like method of calculation Volz determined that 448 tons of rock had been removed from plaintiffs' land not subject to defendant's lease.

Gus F. Johannes had been the officer in charge of the operations of several quarries. He was with the Glenco Lime and Cement Company from 1909 to 1948, and as an officer of the company from 1917 to 1948. Most of his life had been devoted to quarrying operations and the measurement of rock. At the time of trial he was engaged in real estate work, and worked on industrial projects with engineers and geologists, who would determine the type of stone involved and he would evaluate and calculate the amount of stone available in a given area for prospective purchasers. He stated he could look at a quarry that had been operating for 10 to 15 years and which he had never seen before and could estimate the tonnage of rock that had been removed. He stated a cubic foot of limestone weighed

167 or 168 pounds. He spent a half day walking over defendant's quarry, describing it as a small side hill operation; and, "measured by practical methods, as many a business man would do," giving consideration to the fill on the premises, stated in excess of one-half million tons of rock had been removed.

Defendant first contends the court erred in overruling its motions for directed verdict on Counts I and II at the close of all the evidence and its post-trial motion for judgment "because there was no substantial evidence to support respondents' claimed damages on either count and the verdict was speculative and conjectural and based upon speculation and conjecture in that the method by which respondents sought to prove the royalties and damages allegedly owed to them by appellant was inaccurate, improper, could not and did not establish the amount of royalties and damages due with any reasonable degree of certainty."

■ Plaintiffs' counsel contends a submissible case was made on each count; but cites no authority, case or text, in support of his position. See Supreme Court Rule 1.08(a) (3), (c), 42 V.A.M.S.

Defendant states that the amount of plaintiffs' damages must be proved with "reasonable certainty," and are not to be allowed if not so proved. Hargis v. Sample, Mo., 306 S.W.2d 564, 569[4–7]; Seelig v. Missouri, K. & T. R. Co., 287 Mo. 343, 230 S.W. 94[4]; Central Coal & Coke Co. v. Hartman, 8 Cir., 111 F. 96, 102(2); Baldwin v. Desgranges, 355 Mo. 959, 199 S.W.2d 353, 358[5].

Defendant argues "that the only method by which the amount of rock removed from the premises can be proved with reasonable certainty is by showing the actual weight of the rock that left the premises." Defendant's other citation, Rothwell v. Dean, 60 Mo.App. 428, 436, involving a portion of an embankment which had washed away while under construction and before it had become permanent, has language supporting defendant's contention; but, notwith-

standing the views of the author of that opinion, the court considered the engineer in charge of the work, who had seen the embankment before and after its damage, was competent to estimate the quantity washed away with approximate accuracy. This Rothwell case is cited in Wilson v. Buchanan County, 318 Mo. 64, 298 S.W. 842, 847[3, 8], a case involving a gross mistake, which was not susceptible of exact calculation, in the yardage of earth moved under a road grading contract, and in the circumstances the opinion of expert witnesses, who had made observations of the situation, was held to constitute probative evidence.

While not precisely in point on the facts the reasoning in Lyons v. Central Coal & Coke Co., 239 Mo. 626, 144 S.W. 503, 509 [3], is applicable. There, plaintiffs sued in trespass for coal mined under their land by means of drifts from a 100-foot shaft on defendants' lands. Defendant company ceased operation in 1903. The trespass was discovered in 1906, after it had become impracticable to enter the underground operations and accurately estimate the coal that was taken. We quote (144 S.W. loc. cit. 504): "For the purpose of showing the amount of coal taken by defendants, proof was introduced of borings made by plaintiffs from the surface, and testimony from experts on results; also, verbal testimony from men who had worked for the Coal Company in the entries under plaintiffs' land, and who undertook to estimate from memory the number and size of chambers excavated, and also the thickness of the vein of coal mined therein. From computations based on this testimony, plaintiffs arrived at the amount of coal which they claimed the Coal Company had taken. The testimony of these workmen was given six years after the work was done." The court held this was substantial evidence for submitting plaintiffs' case to the jury, stating: "If the plaintiffs produced the best evidence within their power to obtain, and this evidence tended to prove the amount taken, they were within the law." See,

among others, Pope v. Ramsey, 78 Mo.App. 157, 161; Golden Reward Mining Co. v. Buxton Min. Co., 8 Cir., 97 F. 413, 418, 419; Hilty v. Saltsburg Coal Mining Co., 55 Pa. Super. 104, 112; Faulkner v. Wynnewood Park Corp., 57 Montg. Co. Law Rep'r 124, 126; Northern Light Mining Co. v. Blue Goose Min. Co., 25 Cal.App. 282, 143 P. 540, 545[14].

We find no testimony of record that the method used by plaintiffs' witness Volz in arriving at his determinations was not proper. The question is more of an engineering than a legal problem. Defendant's contention is overruled.

Defendant says plaintiffs' verdict directing instruction on Count II was erroneous "because (1) it failed to instruct the jury as to the proper measure of damages, to-wit, the difference between the reasonable value of respondents' property before and after the alleged trespass; and (2) it was misleading in that it gave the jury the erroneous impression that respondents were entitled to the value of the rock allegedly removed after it had been processed rather than before processing."

Plaintiffs' said instruction, so far as involved, read: "* * * then your verdict on Count II should be for the plaintiffs in an amount equal to the reasonable value, if any, of the stone so removed, if any, from the plaintiffs' premises, not, however, to exceed the sum of $4,480.00."

Section 537.340 RSMo 1949, V.A.M.S., provides, so far as material: "If any person shall cut down * * * any tree * * * on the land of any other person, or shall dig up, quarry or carry away any stones * * * being a part of the realty, or any roots, fruits * * * in which he has no interest or right, * * * being on land not his own, * * * the person so offending shall pay to the party injured treble the value of the things so * * * carried away, with costs." Section 537.360 provides that if such "defendant had probable cause to believe that the land on which the trespass is alleged to have been com-

mitted, or that the thing \* \* \* carried away \* \* \* was his own, the plaintiff in the action \* \* \* shall receive single damages only, with costs." Said sections were originally parts of the same act, § 537.360 being in the nature of a proviso (Mo. Territorial Laws, p. 524, §§ 1, 2; 2 Laws Mo.1825, p. 781, §§ 1, 2). It is so stated in Chilton v. Missouri Lumber & Min. Co., 144 Mo.App. 315, 127 S.W. 941, 943(4).

The plaintiffs maintained a quarry on land not leased to defendant. An objection was interposed when plaintiff Paul was asked the reasonable value per ton of the stone taken from premises not leased to defendant on the ground the question should be made clear whether he was being asked about "the limestone in the ground or in trucks going to the consumer"; then followed: "Q. In the ground? A. When it is taken out it is botacina marble, $10.00 a ton." "Botacina marble" was the trade name used in merchandising the terrazzo chips. We think the jury would understand that the witness' voluntary reference to "botacina marble" was to the rock when processed into terrazzo chips for sale, and that the $10 was his estimate of the value of the limestone in the ground. There was testimony from defendant's witnesses from which the jury could find that the terrazzo chips sold for $14.50 a ton and the unquarried rock had a value of $5 or of $6.74 a ton in the ground. Defendant says its value was only five cents a ton in the ground, the royalty mentioned in the lease of 1941. These values were for the consideration of the jury, and any one factor was not conclusive. The $2,000 verdict on Count II for the 448 tons involved is less than a verdict based upon defendant's evidence of $6.74 per ton or $5 per ton for the unquarried limestone.

■ Plaintiffs' action on Count II was under § 537.340. Defendant's case of St. Louis Trust Co. v. Bambrick, 149 Mo. 560, 51 S.W. 706, 708, 709, was an action for damages for overflowing plaintiff's

land and was not under § 537.340; and in Connoley v. Beyer Crushed Rock Co., 355 Mo. 684, 197 S.W.2d 653, 656, both parties proceeded on the same theory in their submission of the issue. The court stated in the Connoley case: "The reasonable market value was the price which the unmined rock would bring when offered for sale by one who was willing, but not obliged to sell it, and bought by one who was willing to purchase, but not compelled to do so." The instruction might have been amplified; but the "reasonable value" of the stone removed conformed to the wording of § 537.-340 on the issue of plaintiffs' damages and did not misstate the law; and if defendant considered the instruction might be misleading it was defendant's duty to request an instruction advising the jury in more explicit language respecting the measure of plaintiffs' damages. Brewer v. Rowe, 363 Mo. 592, 252 S.W.2d 372, 376[4]; Happy v. Kenton, 362 Mo. 1156, 247 S.W.2d 698, 705[10]; Quinn v. Atchison, T. & S. F. R. Co., Mo.App., 193 S.W. 933[5].

The point is disallowed.

Defendant's last point is that the verdict on each count was excessive, "and the trial court erred in failing to grant a new trial or order a remittitur." No authority is cited.

■ The only development of this issue with respect to Count I in defendant's argument is: "With respect to Count I, the verdict of $16,000 was excessive by the amount that such verdict exceeds nominal damages only." It would appear that plaintiffs either established or failed to establish actual damages under Count I. We have hereinbefore ruled that plaintiffs established substantial actual damages under said Count and this disposes of defendant's argument on said issue.

■ Defendant's argument with respect to the $2,000 verdict on Count II being excessive is that "it was based upon an erroneous measure of damages" and "it was based upon the value of the rock al-

legedly taken after processing rather than before," defendant contending its gross value was only $22.40, that is, the equivalent of the five cents a ton royalty provided for in the lease. Our discussion of plaintiffs' instruction on Count II of the petition discloses that there was evidence of record sustaining the award of $2,000 damages on said count.

The trial court approved the amount of the verdict on each count, and defendant's presentation does not disclose error.

The judgment is affirmed.

BARRETT and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BOHLING, C., is adopted as the opinion of the court.

All concur.