# Hilty *v.* Saltsburg Coal Mining Company, Appellant.

*Mines and mining—Wrongful mining—Action for treble damages—Evidence—Value of coal in place.*

1. In an action to recover treble damages for coal wrongfully mined, a witness may testify as to the value at the pit mouth of the coal taken, if it appears that such testimony was offered merely for the purpose of showing the familiarity of the witness with the business as conducted in the locality, and the elements which he considered in his estimate

of the value of the coal in place which he had previously given, without objection by the defendant.

2. Where coal has been wrongfully mined, the value of such coal in place is properly estimated upon the basis of a royalty of so much per ton, where it appears that by reason of the location of the coal, its proximity to mining operations and its accessibility to market, it had a market value for operating purposes at a price per ton.

3. In an action for coal wrongfully mined a mining engineer called as a witness for the plaintiff may be permitted to base his calculations as to the amount of coal taken, upon maps of the workings furnished him by the defendant, if it appears that such maps covered only such portions of the mine as were inaccessible because of the amount of water in them.

4. Where a portion of two acres of coal is wrongfully mined the owner will not be entitled to recover damages for the remaining coal in place, where it appears that such coal was necessary to support the surface, and therefore had no market value; but if the coal which remained in place had a market value greater than the amount of damages which its removal would cause to the surface, then the plaintiff would be entitled to recover for any depreciation in that market value which had been caused by the manner in which the defendant had mined through it.

5. In an action to recover damages for the wrongful mining of coal, where it appears that the plaintiff owned both surface and coal, the plaintiff may show as an element of damages that springs upon his land had been destroyed by reason of the wrongful removal of his coal.

6. In an action to recover damages for the wrongful mining of coal, an offer to prove that coal in a certain old mine had not deteriorated from being exposed to the air, is properly refused, where it appears that the testimony of the witness had not shown that the mine to which the offer referred was flooded with water, as were the headings driven through plaintiff's coal by the defendant.

*Practice, C. P.—Charge—Mistake in stating testimony.*

7. A judgment will not be reversed because of a slight inaccuracy in the statement of testimony by the trial judge in his charge, where such inaccuracy does not go to the real merits of the controversy. The attention of the court should be called to the mistake at the time so that it may be corrected.

Argued May 5, 1913. Appeal, No. 182, April T., 1912, by defendant, from judgment of C. P. Indiana Co., June T., 1911, No. 260, on verdict for plaintiff in case of George C. Hilty v. Saltsburg Coal Mining Company.

Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ.  Affirmed.

Trespass to recover treble damages for the wrongful mining of coal.  Before TELFORD, P. J.

At the trial R. H. Wilson, a mining engineer and witness for the plaintiff, was asked this question:

"Q. State whether or not you know the value of coal in the market in the neighborhood?"

Objected to as incompetent, the witness having already testified to the market price of coal in place.

The Court: Objection overruled, exception noted and bill sealed. [1]

"Q. Do you know the value of coal in the market in the neighborhood?  A. That is somewhat various.  Take the commercial mines; the nicest coal loaded on the cars would be anywhere from $1.00 to $1.15 around there. Country pits will be lower; around four and four and a half cents, or five cents a bushel at the pit mouth. Q. From your examination of these entries on the two acres of ground, could you estimate the amount of coal that was taken out?"

We object; we think he has not shown sufficient measurements.

The Court: Objection overruled, exception noted to defendant and bill sealed. [2]

"A. I think I could approximate it.  Q. From your examination of these entries, state how much coal was taken out; calculate it which ever way you choose? A. Taking the four entries and there is a cross cut in each entry under this tract of two acres.  My estimate is that it would be close to 1,000 tons of coal taken out."

"Q. How much would that coal that is in place there in the ribs; how much has it depreciated in view of the fact that the surface cannot be interfered with, as it stands there as it is, and what it would have been had the entries not been made?  A. Assuming that the surface must be supported ———."

Mr. Taylor: What is the purpose?

Mr. Banks: To show the injury done to the coal in place.

Objected to as not a competent measure of damage. There is no allegation here of negligent mining upon the part of the defendant, and this is an action brought to recover for the coal taken and not for the coal that is left.

The Court: Objection overruled, exception noted and bill sealed.

Question read:

"A. I don't know whether I can answer that question or not. I don't see that I can answer that intelligently. May be I don't understand the question, but I cannot answer it."

Question read:

"A. I don't understand it. Q. What is it worth in the market, considering the fact that the surface must be supported? A. If the surface is to be supported which the question presumes, then of course the coal has no market value, because it must remain there.

Mr. Banks: "Q. What effect has the water on this coal?"

Mr. Taylor: We ask the court to strike out the last answer of the witness, as incompetent.

The Court: Motion to strike out is declined, exception noted to defendant and bill sealed. [3]

"Q. What injury, if any, has been done to the coal remaining by reason of the operation of the defendants, as affecting the market value of the coal, and the facility with which it could generally have been mined?"

Objected to as incompetent; also objected to as lumping damages.

The Court: Objection overruled, exception noted to defendant and bill sealed. [4]

Question read:

"A. Does that mean the remaining coal, leaving out the coal that was taken out? Q. Yes, sir. A. Taking

108 HILTY *v.* SALTSBURG COAL MINING CO., Appellant.

Statement of Facts—Charge of Court below. [55 Pa. Superior Ct.

all the elements into consideration, probably it is reduced ten per cent in value. Putting that into concrete figures, say there is a matter of 300,000 bushels remaining. That would be a very low estimate of the amount of coal remaining, and the ten per cent it would be $300 worth of damages $300 damage to all the coal that is left; the coal alone."

The court charged in part as follows:

[The defendant contends that it took out 263 tons of coal from the headings one and two, without knowledge that there was encroachment upon the plaintiff's land. The defendant admits that it took the coal from headings three and four, knowing at the time the coal was taken, that it was trespassing upon the plaintiff's lands, and it asks you in the first instance for coal remaining in headings one and two, to award against it in this case, single damages—that is, for the single value of the coal, and that you award for the plaintiff as to the coal removed from headings three and four, three times the value of the coal in place.] [5]

[The plaintiff in addition to the value of coal taken, seeks to recover for alleged resulting injury to his premises. He testifies that he is injured by depreciation of the remainder of the body of his coal under these two acres. This injury, he claims, results from the air and water coming in contact with the coal in the walls of the headings, as they have been left by the defendant. Also, by greater difficulty in mining and removing the coal that is left, in the future, when he is ready to take it out.] [6]

[The plaintiff further alleges that as a damage resulting from the taking out of this coal, that two springs and a stream or streams of water flowing across these two acres of land, were injured. You will recall his testimony as to the damage which he says has resulted to these two acres of land, or the value of the two acres, its use and value from alleged injury, or destruction of

the springs, and the interference with the stream of water, the allegation being that the springs and flowing water was carried from the surface into the headings of the defendant under ground. He alleges that during the summer time since these headings were driven, the stream and springs are dry. Several witnesses have been upon the stand on the part of both plaintiff and defendant. They have testified to the character of these springs, and the stream, and their condition before and since the trespass was committed. It will be for the jury to determine whether these springs existed or not, and whether or not they produced water in such volume as to be of value to the two acres of ground such as the plaintiff contends. If they did exist and were of value to the two acres, were they destroyed or injured by the act of the defendant to plaintiff's damage? The jury will have to determine, if they find there was such injury, the extent of it. . . .

There is not much that I can say to you in reaching a just conclusion. If the water remains substantially as it was before the driving of the headings, then the plaintiff has sustained no damage on this account. If the water supply has been drawn from the surface to the mine to an extent that causes appreciable injury to the surface of these two acres of ground, then the plaintiff is entitled to be compensated to the extent of such injury as you may find was done to plaintiff's land.

So far as I can recall there is no evidence of the extent of the alleged injury, except that, as testified to by plaintiff. It is alleged that during the summer the water failed and stock pasturing there could not obtain water, and the plaintiff would therefore be deprived of some revenue, the extent of which injury he did not inform the jury. The jury cannot guess on what the plaintiff's damage would be. If they cannot find such evidence as satisfied their minds, they will be justified in refusing the item altogether.] [7]

110 HILTY *v.* SALTSBURG COAL MINING CO., Appellant.

Charge of Court below—Opinion of the Court. [55 Pa. Superior Ct.

[The plaintiff has testified in the hearing of the jury, the amount of damage which he says he has sustained for these reasons; also claim is made for the alleged probable settling of the surface. I believe no other witness, except the plaintiff, has testified to the amount of damage on these accounts, except probable testimony of Mr. Wilson, in which he says that coal which is affected by water and air may depreciate ten per cent of its value. Some other witnesses have testified to some injuries which they say may result to the plaintiff from those causes, but no one I believe, has fixed any amount of damage which they are willing to say will result.] [8]

Verdict for plaintiff for $1,037.51, on which judgment was entered for $800, all above that sum having been remitted. Defendant appealed.

*Errors assigned* were (1–4) rulings on evidence, quoting the bill of exceptions; (5–8) above instructions, quoting them.

*D. B. Taylor*, with him *M. C. Watson*, for appellant, cited: Oak Ridge Coal Co. v. Rogers, 108 Pa. 147; McIntyre v. Pittsburg, 238 Pa. 524.

*William Banks*, with him *J. N. Banks*, for appellee, cited: Ruttledge v. Kress, 17 Pa. Superior Ct. 490.

OPINION BY PORTER, J., October 13, 1913:

The plaintiff was the owner of a tract of land in Indiana county which is underlaid by the Pittsburg vein of coal. The plaintiff owned the coal underlying two acres of his land, and title to the coal underlying the remainder of the tract was in the defendant company. The defendant company in its mining operations, in the years 1908 and 1909, drove four entries or headings through the coal owned by the plaintiff, without the consent of the latter. The plaintiff brought this action to recover

damages for the trespass, averring that the defendant company had knowingly mined and converted the coal taken and that he was entitled to treble damages for the same, and averring, also, that the removal of the coal taken had caused an injury to the surface, through the loss of springs, and to the remaining coal, because of the manner in which the entries were cut through it. The plaintiff recovered a verdict and judgment in the court below and the defendant appeals.

The first specification of error refers to the admission of testimony as to the value at the pit mouth of the coal taken. We are of opinion that the admission of this testimony worked no harm to the cause of the defendant. The witness, in connection with the testimony complained of, testified to the cost of mining and putting the coal at the pit mouth. This testimony was offered merely for the purpose of showing the familiarity of the witness with the business as conducted in that locality and the elements which he considered in his estimate of the value of the coal in place, which he had previously given, without objection by the defendant. The sum total of the testimony of this witness was that this coal was worth one cent per bushel, or twenty-six cents per ton, in place. "It is perfectly clear that the general selling value of coal by the acre in the neighborhood would be a very uncertain standard by which to measure the value of one or two acres reserved for a particular purpose. A few acres so reserved would have no general selling value in the neighborhood. Under these circumstances the learned court below allowed plaintiffs to prove the value of the coal at the pit mouth, from which was deducted the cost of mining and transporting it to that point, the difference being a measure of the value of the coal in place. There was also evidence of the royalty value of the coal in place, that is to say, ten cents a ton, the amount fixed under the terms of the lease. The effort of the trial judge was to require the parties to prove the value of the coal in

place by the best evidence available under the circumstances:" Little v. Greek, 233 Pa. 534. The witness was competent and the interests of the appellant were properly safeguarded. All the evidence in the case, both of plaintiff and defendant, clearly established that this coal, by reason of its location, its proximity to mining operations and its accessibility to market, had a present market value on the royalty basis, and that it had a market value for operating purposes at a price per ton. The only evidence offered by the defendant as to the value of this coal in place was upon the basis of a royalty of so much per ton. The evidence thus establishing that the coal in place had a royalty value and there being no testimony as to its value upon any other basis, it was proper for the court to submit the case to the jury upon the theory upon which it had been tried, both by appellant and appellee: Trustees of the Proprietors of Kingston v. Lehigh Valley Coal Co., recently decided by the Supreme Court and not yet reported. There was in the present case but little conflict between the testimony of the witnesses for the plaintiff and those for the defendant, as to the value of a ton of coal in place, in that locality. They all agreed that it was worth one cent per bushel, or twenty-six cents per ton, the only conflict in the testimony being that some of the witnesses for the defendant testified that it meant "one ton of 'forked coal,' that is coal from which the slack has been separated." Said witnesses also testified that by such separation, two-thirds of the coal only is considered marketable. The court submitted the question raised by the conflict of testimony, upon this point, to the jury in a manner of which the defendant does not complain. The question of the value of the coal in place having been submitted to the jury in this manner, we are convinced that the first specification of error is without merit.

The second specification of error complains that R. H. Wilson, a mining engineer, was permitted to testify

as to the amount of coal taken, without having shown that he had made sufficient measurements. The witness testified that he had made measurements at various places in the mine and that as to two of the entries to which access could not be had because of the amount of water in them, his calculation was based upon the maps of the workings furnished him by the defendant company. These maps of the workings had been made by this appellant and had been furnished to the witness, as the representative of the plaintiff, for the very purpose of showing what coal they had taken out. The maps having been so furnished, it was entirely competent for the engineer employed by the plaintiff to use them as the basis of his calculations of the amount of coal involved by the workings which they represented, particularly in view of the fact that some of the entries which they had wrongfully made could not be measured because of the amount of water standing in them. The second specification of error is overruled.

The plaintiff had in his statement averred that in addition to damages for the coal actually taken he was entitled to recover for depreciation in the value of the coal which remained and the loss of the springs upon the surface. The value of this two acres of coal to the plaintiff, who owned the surface also, manifestly depended upon what effect the removal of the coal would have upon the surface. If the removal of the coal would damage the surface to an amount greater than the price that could be obtained for the coal, then it is manifest that the coal which remained in place had no market value, either before or after the trespass by the defendant. The testimony which is the subject of the third specification of error did not, therefore, prejudice the cause of the defendant. When counsel for plaintiff asked the witness the question, "Q. What is it worth in the market considering the fact that the surface must be supported?" he probably expected the witness to

answer that the coal had some value, even if it was made subject to the support of the surface. The answer of the witness, however, was, "If the surface is to be supported which the question presumes, then, of course, the coal has no market value, because it must remain there." If the jury accepted the opinion of this witness as correct, then they certainly would not allow the plaintiff damages for the deterioration of the market value of coal which had no market value, because it must remain in place to support the surface. The third specification of error is overruled.

If the coal which remained in place had a market value greater than the amount of damages which its removal would cause to the surface, then the plaintiff was entitled to recover for any depreciation in that market value which had been caused by the manner in which the headings of the defendant's mine had been driven through it. If the mining operations of the defendant had so cut up this two acres of coal owned by the plaintiff as to impair the facility with which it could have been mined, and if the workings of the defendant had filled with water, that might have an effect upon the market value of the remaining coal, and it was competent for the plaintiff to show that fact by an engineer familiar with mining operations. The fourth, sixth and eighth specifications of error are dismissed.

The defendant company admitted that it had mined 263 tons of coal out of the headings 3 and 4 with knowledge that said coal was the property of the plaintiff, but contended that the headings Nos. 1 and 2 had been driven through plaintiff's coal without knowledge on the part of the defendant that it was trespassing. The learned judge of the court below in instructing the jury made a slight slip in referring to the position of the defendant, and said: "The defendant contends that it took out 263 tons of coal from the headings 1 and 2, without knowledge that there was encroachment upon the plaintiff's land." The 263 tons which the defend-

ant admits that it took with knowledge of the owner-
ship by plaintiff was not taken out of the headings 1
and 2, but was taken from 3 and 4. The amount of
coal which the defendant asserted that it took before it
acquired knowledge of the fact that it was trespassing
was considerably more than 263 tons, and the statement
of the court was, therefore, not strictly accurate. But
a judgment is not to be reversed because of a slight in-
accuracy in the statement of testimony, which does not
go to the real merits of the controversy. The attention
of the court should have been at the time directed to
this mistake, and it would have no doubt been promptly
corrected. The defendant having permitted this mis-
take of recital of fact by the court below to go unchal-
lenged, must be presumed to have considered it of no
importance, and cannot now be heard to assert that the
judgment should be reversed because of it. The fifth
specification of error is dismissed. If the surface of
plaintiff's land had been injured by the removal of this
coal by the defendant, then he was entitled to recover
not only for the coal taken but for the injury to the
surface. The plaintiff had testified distinctly that two
springs upon his land had been destroyed by reason of
the wrongful removal of his coal. He was contradicted
upon this point by a number of witnesses. The court
could not undertake to pass upon this contradictory
testimony as a matter of law, the question was one of
fact for the jury. The court left the question to the
jury, calling attention to the testimony of the witnesses
on behalf of the defendant who contradicted the testi-
mony of the plaintiff, upon this point, and in conclu-
sion saying: "The jury cannot guess upon what the
plaintiff's damage would be. If they cannot find such
evidence as will satisfy their minds, they will be justified
in refusing the item altogether." The seventh specifica-
tion of error is dismissed. The offer of testimony, the
rejection of which is the subject of the ninth specifica-
tion of error, was properly excluded. The offer was to

show that the coal in a certain old mine had not deteriorated from being exposed to the air. The testimony of the witness had not shown that the mine to which the offer of testimony referred was flooded with water, as were the headings driven through plaintiff's coal by the defendant. The offer was not to show the general effect, upon the coal remaining, of opening entries through a body of coal, it was to show the effect in one particular old mine, without attempting to show that the conditions were the same as those affecting the body of coal involved in this case.

The judgment is affirmed.